Argued and submitted May 24, affirmed October 27, 1982

# SHOULDERBLADE,
*Appellant,*
*v.*
## OSBORN et al,
*Respondents.*

(No. 80-847, CA A22276)

652 P2d 836

Phil Studenberg, Klamath Falls, argued the cause and filed the brief for appellant.

William L. Sisemore, Klamath Falls, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

Joseph, C. J., dissenting.

## THORNTON, J.

Plaintiff, personal representative of the estate of Josie Godowa Foster, sued to quiet title to a parcel of land, claiming that the deed re-recorded by defendants for a neighboring parcel, which decedent had previously sold to defendant Osborn, contained an easement running through Foster's parcel that was never granted. Defendants counterclaimed for reformation of the original deed by which Foster had conveyed the allegedly dominant parcel, maintaining that the original deed should have included the agreed-upon easement. The trial court decreed reformation, and plaintiff appeals.

We review *de novo*. ORS 19.125(3). In cases such as this, where there is conflicting testimony, the findings of the trial judge, who had the opportunity to observe the witnesses, are entitled to great weight. *Jensen v. Miller,* 280 Or 225, 227, 570 P2d 375 (1977); *Almond v. Anderegg,* 276 Or 1041, 1043, 557 P2d 220 (1976). Nevertheless, we are not bound by those findings.[1]

The record reveals that on June 8, 1977, defendant Floyd Osborn entered an earnest money agreement to purchase from Foster two parcels of land described as follows:

"Parcel I: SE1/4 Sec. 28, Twp. 35 S., R. 12, E.W.M. and W1/2 of NW1/4 Sec. 34, Twp. 35 S., R. 12, E.W.M. Parcel II: An undivided 3/4 interest in S1/2NE1/4 Sec. 28, Twp. 35 S., R. 12, E.W.M., and an undivided 3/4 interest in E1/2NE1/4 Sec. 33, Twp. 35 S., R. 12, E.W.M. *TOGETHER WITH an easement for ingress and egress over the Northerly 20 feet* of [Foster's retained parcel]." (Emphasis supplied.)

The 20-foot easement probably coincided with an easement earlier granted to a power company for installation of power lines.[2]

---

[1] Given that the testimonial evidence of the parties' intent was diametrically opposing, the trial judge necessarily had to believe defendants' witnesses and disbelieve plaintiff's. The record, however, does not reflect any express findings on credibility. At the conclusion of arguments, the trial judge told the parties that he would give them a letter opinion. Such a letter is included in appellant's brief, but it is not part of the record. In the letter, the trial court found Osborn more credible than plaintiff and concluded that Mrs. Foster intended to sell the land with the easement and that it was "inadvertently" omitted from the deed.

[2] Osborn testified that Mrs. Foster and he had used the document granting the power company an easement to locate where his easement would run, but the document does not specifically locate the easement.

On June 13, 1977, Osborn and Mrs. Foster signed a second earnest money agreement to replace the first, this time describing a 60-foot easement over the northern part of Foster's property.[3] Osborn testified that he had told Mrs. Foster that he needed a 60-foot easement in order to qualify for an Oregon veterans' loan and that she had said, "[T]hat didn't make any difference, that part was all right." Osborn's testimony was that, throughout the negotiations for the purchase of the land, Mrs. Foster had agreed to include an easement in the purchase price.

The deed as executed and recorded, however, did not include any easement. Osborn testified that, about "seven or eight or nine" months after he bought the property, he hired an engineer to survey the property and, in going over the deed with him, discovered the omission. He went to the title company, which added the description of the easement to the deed, and he initialed the change and re-recorded the deed. He did not attempt to get Mrs. Foster's signature or initials because, he testified, "There wasn't any change in the original deal — it was a copy of the original deed that we made." He subsequently sold the property, with the easement, to the Walshes. Mrs. Foster died before trial. Plaintiff, her daughter and personal representative, maintained throughout her testimony that her mother had never agreed to grant any easement and that the only time Osborn had discussed the easement, he had asked, " '[W]ouldn't it be nice to have a road run from here across the field toward the Weiser place?' " and that Mrs. Foster had replied, " 'I don't want nobody making a road in my field,' " or " 'I don't want anybody in my field.' " She testified that, when Mrs. Foster found out about the recorded easement, she was particularly upset because her house was within the 60-foot easement.

The attorney with whom Mrs. Foster discussed the second earnest money agreement testified that he had no clear recollection of the discussion. However, he said that he was concerned about the price she was asking and that

---

[3] In the first agreement, Osborn had agreed to buy Foster's interest plus the interests of two others in Parcel II. Foster was "going to get the others' interest" to sell to Osborn. However, she was unable to do this, so the agreement was changed to reflect the fact that she was selling only her interest.

she only wanted to know if the papers were "okay." He recalled no discussion about an easement.

■ ■ There is a strong presumption that a deed expresses what the parties had in mind, and the burden of overcoming the presumption rests on the party seeking reformation, *Eley v. Miller*, 166 Or 80, 88, 110 P2d 587 (1941), who must establish (1) that there was an antecedent agreement to which the deed can be reformed; (2) that there was a mutual mistake or a unilateral mistake on his part and inequitable conduct on the part of the other party; and (3) that he was not guilty of gross negligence. *Jensen v. Miller, supra,* 280 Or at 228-29. The party must provide evidence that is "clear, satisfactory and convincing." *Eley v. Miller, supra,* 116 Or at 91-92. A mere preponderance of the evidence will not suffice. *Kontz v. B.P. John Furniture Corp.,* 167 Or 187, 205, 115 P2d 319 (1941).

Plaintiff argues that defendants' failure to produce the title company employe who allegedly altered the deed, defendant Osborn's failure to notify Mrs. Foster of the alteration and the fact that the easement runs through the Foster home all argue against reformation. However, no claim of fraud is made.

Plaintiff testified that, when her husband told Mrs. Foster about the re-recorded deed, she

"* * * was cussing [Osborn] around because he lied to her and all that."

Her further testimony was as follows:

"Okay, was she angry just because — Okay, do you remember at what point she found out the easement went through her house?

"Well, that is the way it sounded to her, you know, and well, 60 feet easement straight up the north line there — well, it would mean her house was right in there.

"And she was upset about that?

"She was."

A neighbor of Osborn's, Mr. Anderson, testified that, after plaintiff's husband discussed the recorded easement with him, Mrs. Foster came to see him and said,

" 'I hear this white man is going to put a road through my house,' and I said, 'No.' I said, 'Mrs. Foster,' I said, 'He

won't do nothing like that,' and she said, 'Well, that's what I hear,' and I said, 'Well, it is not true.' And I said, 'You don't have nothing to worry about as far as him putting a road through you house, nobody is going to tear your house up.' So, she went away and I mean she was satisfied."

Osborn was required to show that, not only he, but Mrs. Foster as well, intended to include the easement in the deed and mistakenly signed a deed not containing it.

" ' "Mutual mistake in relation to reformation means a mistake shared by both parties. It consists in a misunderstanding reciprocal and common to both the contracting parties, when each alike labored under the same misconception in respect to the terms of a written instrument, *intending at the time of the execution of the instrument to say one thing and by mistake expressing another.* The mistake cannot be mutual if the minds of the parties to the instrument did not meet in a common intent. By mutuality is not meant that both parties must agree on the hearing that the mistake was in fact made, but the evidence of the mutuality of the mistake must relate to the time of the execution of the instrument, *and show that at that particular time the parties intended to say a certain thing and by mistake expressed another."* (Emphasis added.)' " *Frick v. Hoag*, 277 Or 135, 139, 559 P2d 879 (1977).

The issue is primarily one of credibility. The trial judge stated in his letter opinion:[4]

"On the whole, I find Mr. Osborn [defendant] was more credible than Mrs. Shoulderblade."

On *de novo* review we conclude the evidence supports the order of reformation. The documents covering the transfer of the property filed with the title company and the two earnest money agreements clearly show that the parties intended to include an easement in the deed. Anderson's testimony reveals that Mrs. Foster was not concerned about the easement until she thought that it might reach her house. This development apparently did not occur until a considerable time after the earnest money agreements had been signed. When Osborn discovered that the easement was not mentioned in the deed, he immediately went to the title company and took the action that was suggested to him. The title company employe apparently typed in the

---

[4] *See* n 1, *supra.*

easement description, and Osborn initialed it. Osborn testified that he did not notify Mrs. Foster of the action because he felt that the change simply reflected the actual agreement between him and Mrs. Foster. We conclude that it was the intent of the parties to sell the land with the easement but that through mutual mistake the easement was inadvertently omitted from the deed.

Affirmed.

**JOSEPH, C. J.,** dissenting.

The trial judge found Osborn more credible "on the whole." I would need to be more convinced of the weight of the evidence and the credibility of Osborn before I could conclude that Foster intended to grant him an easement through her house — and one 60 feet wide at that. Osborn's failure to talk to her about the supposed mistake, his quick profit[1] and his failure to produce the critical witness from the title company hardly support his creditworthiness. Without the credibility factor, his reformation claim fails. *See Steiner v. SAIF,* 34 Or App 317, 578 P2d 497 (1978). I therefore dissent.

---

[1] He paid Mrs. Foster $26,000 for a deed without the easement. About a year later he sold to the Walshes by a deed with the easement for $86,000.