Argued and submitted November 3, 2005, judgment in favor of plaintiff and against City of Seaside reversed; otherwise affirmed January 3, 2007

Zandra WINTERS,
*Respondent,*

*v.*

The COUNTY OF CLATSOP,
duly organized under the laws
of the State of Oregon,
*Defendant,*

*and*

The CITY OF SEASIDE,
duly incorporated and organized under the laws
of the State of Oregon,
*Appellant.*

03-2129; A124361

150 P3d 1104

Jeffrey M. Batchelor argued the cause for appellant. With him on the briefs were Mathew D. Larson and Markowitz, Herbold, Glade & Mehlhaf, P.C., and Dan Van Thiel.

John C. Mercer argued the cause for respondent. With him on the brief was Wood Tatum Sanders and Murphy.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Linder, Judge pro tempore.

LINDER, J. pro tempore.

## LINDER, J. pro tempore

The issue in this case is whether plaintiff is entitled to restitution of the amount paid for property bought from the City of Seaside. The property was conveyed to plaintiff's predecessor in interest through a bargain and sale deed, and, thus, through a deed containing no warranties of title. About 16 years later, plaintiff discovered that the city's attempted sale of the property had triggered an automatic reversion of the title to Clatsop County. We conclude that restitution is not available to plaintiff on an unjust enrichment theory. Accordingly, we reverse the award of restitution to plaintiff.

The facts are straightforward and undisputed. In 1984, the City of Seaside decided to sell four parcels of city-owned land. Each parcel had been identified as excess property that had "no restriction" on it. To authorize the sale, the city council adopted an ordinance declaring that "the City of Seaside has ownership and Fee Simple Title" to the parcels and that the city did not plan to use the parcels for municipal purposes. Ordinance No. 84-11. The ordinance further authorized city officials to sell the parcels and "to sign deeds" for their sale. *Id.*

Once the sale of the parcels was so authorized, the city published notice in the local newspaper that the parcels would be sold through public auction. The notice made no representations about the city's title to the property, and stated, in pertinent part, that "[f]our parcels of land located within the City of Seaside will be individually sold to the highest bidder at a public auction[.]" Ethel Mae Winters learned of the proposed sale of the parcels through the public notice. Her daughter—plaintiff—attended the auction and successfully bid on Winters's behalf on a parcel that was adjacent to Winters's residence. The parcel was appraised at $45,000. Winters was the high bidder for it at $40,000, and she later negotiated with the city to reduce the price to $36,000 in exchange for a cash sale. The city prepared a "bargain and sale" deed for the property, which Winters accepted. As part of the transaction, the city also arranged for a title insurance policy, for which Winters paid. The policy insured

the title for an amount equal to 175 percent of the purchase price (*i.e.*, $63,000).

Neither Winters, who is now deceased, nor anyone else who was involved in negotiating the sale and the deed, was available to testify. The record therefore contains no direct evidence of what Winters understood about the city's title to the property or of whether the city made any representations to Winters about its title during or after the negotiations for the sale. Nor does the record contain any direct evidence as to why the city used, and Winters accepted, a bargain and sale deed rather than a deed with warranties of title. Nor, finally, does the record contain any evidence as to why Winters opted to purchase title insurance. At most, the record provides sketchy evidence that Winters was a businesswoman who owned as many as nine parcels of property at the time of her death. The record also suggests that, when Winters purchased property, she typically purchased title insurance as part of the transaction.

As it turned out, although the city held title to the property at the time of the sale to Winters, it could not convey that title to her. The city had acquired the property from Clatsop County in 1961 via a deed that conveyed the property to the city "to be used solely for the construction of access streets * * * and other municipal purposes." The effect of that provision was to create in the city a fee simple determinable, with a possible reverter to the county. The sale to Winters triggered the reversion and caused title to vest in the county.

Neither Winters nor the city knew of the reversion, however. Nor did anyone discover it for many years. As a result, when Winters took possession of the property, she assumed possession of and control over it as though she had full fee title to it. She paid all taxes on it, and she used it exactly as she intended to use it—as an undeveloped parcel of land that would provide a buffer between her residence and surrounding residences.

Winters died in 1988. Her daughter inherited the property, continued to possess and control it, continued to use it as a buffer between the residence and neighboring land, and continued to pay taxes on it. After possessing and using

the property for about 12 years, the daughter decided to consider selling it. She discovered the reversion in 2000 when her attorney conducted an investigation to prepare to sell the property.

That discovery led to this action to quiet title and for unjust enrichment. Plaintiff—Winters's daughter and heir—effectively sought either to have the property declared to be hers or to obtain restitution of the purchase price paid by Winters and the taxes paid both by Winters and plaintiff over the years. The trial court rejected plaintiff's arguments for why title should be quieted in her favor and, instead, declared the county to be the lawful owner of the parcel. The trial court agreed with plaintiff, however, that the county had been unjustly enriched by the amount that it had collected in property taxes over the years. The trial court therefore ordered the county to repay the taxes paid since 1984, plus interest. The trial court also agreed with plaintiff that the city had been unjustly enriched by the amount of the purchase price that plaintiff's mother—Winters—paid for the parcel. The trial court therefore ordered the city to repay the purchase price, plus interest. The city appeals; the county does not. Our review is *de novo*. ORS 19.415(3).

■■ We begin with the applicable legal principles. It is well-settled that, to establish unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it. *Volt Services Group v. Adecco Employment Services*, 178 Or App 121, 133, 35 P3d 329 (2001), *rev den*, 333 Or 567 (2002). Here, the fact that the first two criteria are satisfied is undisputed: Winters plainly conferred a benefit on the city by paying for the property and the city was plainly aware that it received that benefit. Plaintiff's entitlement to restitution depends on the third criterion—whether it would be "unjust" for the city to retain the purchase price when it lacked conveyable title. More precisely, the issue is whether it would be unjust for the city to retain the purchase price when (a) it lacked marketable title, and (b) the city tendered, and Winters accepted, a deed that contained no warranties of title (*i.e.*, a bargain and sale deed).

Central to the parties' positions on whether it is unjust for the city to retain the purchase price in this circumstance are their different views about whether the record establishes that the risk of any mistake as to the city's title was allocated to Winters. The city urges that, necessarily, the bargain and sale deed had that effect. Such a deed conveys property without any warranties of title, and the purpose of using it in a real property transaction, instead of a warranty deed, is to allocate the risk of bad or defective title to the purchaser. The city maintains that it is not unjust to honor the parties' agreed-upon allocation of the risk by declining to require the seller to repay the purchase price when a defect in title is later discovered. That is especially true, in the city's view, when, as here, the transaction included title insurance, which is designed to protect the purchaser in this precise type of circumstance.

Plaintiff responds that Winters's acceptance of a bargain and sale deed may limit her ability to bring a legal action based on the defect in the city's title, but it does not limit her ability to pursue equitable remedies. Plaintiff urges that the record establishes a mutual mistake of fact by the parties as to the nature of the city's title, and that no evidence demonstrates that the parties consciously negotiated for plaintiff to bear the risk of any defect in title. Under those circumstances, according to plaintiff, the parties' mutual mistake is grounds for restitution of the purchase price on an unjust enrichment theory.

We agree with the city that a bargain and sale deed has more significance than plaintiff gives it. The essential purpose of a bargain and sale deed is to convey whatever title the seller has, without providing a warranty on the seller's part of the nature or quality of that title. That is the settled common-law understanding of the purpose and effect of a bargain and sale deed. *City of Bend v. Title & Trust Co.*, 134 Or 119, 130, 289 P 1044 (1930) (under common law, a bargain and sale deed acts as an instrument of conveyance only and "contain[s] no warranties"). The same understanding has been codified in the Oregon statutes for many years. *See* ORS 93.860(3) (providing that "[a] bargain and sale deed shall not operate to provide any covenants of title in the grantee and the successors of the grantee"). Thus, a bargain and sale deed

is like a quitclaim deed,[1] which similarly provides no warranty or guarantee of good title or interest; and it is unlike a warranty deed, which expressly guarantees the existence and quality of the grantor's right, title, or interest in the property conveyed. *See generally* ORS 93.850. As the city correctly argues, the point of conveying property through a bargain and sale deed, rather than through a warranty deed, is to allocate the risk of a title defect to the buyer.

Plaintiff responds that the record before us does not "establish why this type of deed was used" and that it is "mere speculation" that Winters, by accepting the deed, was agreeing to have the risk of a defective title allocated to her. To be sure, on the limited record before us, we do not know what the parties' subjective states of mind were when Winters bought the property.[2] Objectively, however, the deed establishes their agreement. The inherent legal effect of a conveyance that is made without warranty of title is that the purchaser assumes the risk of defective title. That inherent effect has, for many years, been made express by Oregon statute. *See* ORS 93.860(2)(b). The bargain and sale deed therefore is *prima facie* evidence—and strong *prima facie* evidence—that the parties allocated the risk of defective title to Winters. *Shoulderblade v. Osborn*, 60 Or App 12, 16, 652 P2d 836 (1982) ("There is a strong presumption that a deed expresses what the parties had in mind[.]").

■ Plaintiff, as the party with the burden of proof, had the obligation to overcome that evidence. Plaintiff was understandably hard-pressed to do so, because Winters is now deceased and others involved in the negotiations in 1984

---

[1] A bargain and sale deed differs only slightly from a quitclaim deed. Under a bargain and sale deed, any title acquired by seller after the sale passes by force of the deed to buyer. *Compare* ORS 93.860(2)(b) (describing legal effect of bargain and sale deed), *with* ORS 93.865(2) (describing legal effect of quitclaim deed).

[2] For that reason, we do not agree that the record establishes a mutual mistake of fact, at least not one that is material to the parties' agreement. Again, no one who was a party to the 1984 transaction remains available to explain what the parties subjectively thought. But even if we assume that the city believed it had fee simple title and was confident that there was no reversion or other cloud on that title, and even if Winters thought so too, the fact remains that the parties *bargained* to allocate to Winters the risk that they were wrong. It is difficult to see how, when the parties by agreement allocate the risk of a mistake about a particular fact to one or the other of the parties, the later discovery that there is such a mistake about that fact is material for purposes of undoing the bargain.

either could not be located or were not available to testify. Even assuming that evidence of other negotiations or a different understanding between the parties could overcome the actual terms and legal effect of a bargain and sale deed, plaintiff provided no such evidence in this case.[3]

Nor, contrary to plaintiff's argument, is there any evidence that Winters was induced to buy the property based on an affirmative misrepresentation by the city that it held fee simple title to it. To be sure, as plaintiff urges, the city's ordinance stated that the city had fee simple title to the four parcels that were authorized to be sold. But plaintiff presented no evidence that Winters was aware of the ordinance and its terms or that Winters was otherwise told by any city agent that the city had fee simple title to convey. To the contrary, plaintiff personally testified that her mother—Winters—learned of the proposed sale of the properties through the published notice of the public auction, which declared nothing about the city's title to the property.[4] We need not decide, therefore, whether a mistaken misrepresentation by the city about the quality of its title would be a basis for restitution when, as here, the bargain and sale deed accepted by Winters placed the risk of defective title on her. It is enough to observe that the record does not establish any express misrepresentation, either mistaken or fraudulent, on the city's part. *Compare Restatement (First) of Restitution* § 24(2), and 24(2) comment e (1937) (where a buyer of land accepts the risk that the seller has no title or a defective title, restitution of the purchase

---

[3] We do not suggest that evidence of a prior understanding readily could overcome the terms and legal effect of a bargain and sale deed. The general rule is that, when a deed to property is delivered and accepted, that deed embodies the entire agreement of the parties to a property sale. *City of Bend*, 134 Or at 126-27. Any prior agreements or understandings regarding "title, possession, quantity, or emblements of the land" merge into the deed and are superceded by the deed's terms. *Archambault v. Ogier*, 194 Or App 361, 369, 95 P3d 257 (2004).

[4] Even if there were no direct testimony that Winters knew of the sale through the published notice, rather than the ordinance, Winters could not rely on the adage that all citizens are presumed to know the law. As the Ninth Circuit Court of Appeals has aptly observed, that adage misstates what the law actually presumes. Citizens are presumed to know the obligations that the law imposes on them, not "every word of every law passed[.]" *Bibeau v. Pacific Northwest Research Foundation*, 188 F3d 1105, 1110-11 (9th Cir 1999). The ordinance, which imposed no obligation on any citizen, is not the type of law to which the presumption would apply.

price based on lack of or defective title requires fraud or a mistaken misrepresentation), *with Wilkinson v. Carpenter*, 276 Or 311, 317, 554 P2d 512 (1976) (where parties by contract specifically disclaim any warranties or representations about condition of property that induced purchasers to buy it, purchaser cannot rely on seller's misrepresentations about the property unless such misrepresentations were fraudulently made).

In sum, we agree with the city that plaintiff has not carried her burden to show that permitting the city to retain the purchase price is unjust. In purchasing the property, Winters accepted a deed that legally allocated to her the risk that the city's title was defective. In addition, the city prepared and Winters purchased title insurance, the necessary purpose of which was to protect Winters for the risk she assumed. For several years, Winters enjoyed the use and possession of the property, and plaintiff—her heir—continued that use and enjoyment for many years more. Finally, nothing suggests that the city made any affirmative misrepresentation to Winters, innocent or fraudulent, that would have misled her as to the nature of the risk that she was assuming by accepting the bargain and sale deed. Under the circumstances, it is not unjust to deny restitution and to honor the terms of the bargain and sale deed that Winters accepted.

Judgment in favor of plaintiff and against City of Seaside reversed; otherwise affirmed.