Argued and submitted July 16, 2008, affirmed March 4, 2009

COUNTY OF CLATSOP,
a political subdivision of the State of Oregon,
*Plaintiff-Respondent,*

*v.*

Jessie Autry EHLER,
*Defendant-Appellant.*

Clatsop County Circuit Court
052300; A134627

203 P3d 322

Barbee B. Lyon argued the cause for appellant. With him on the briefs were Edwin C. Perry and Tonkon Torp LLP.

Blair J. Henningsgaard argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this case is who owns certain real property located in Seaside, Oregon. Originally, Clatsop County owned the property. The county conveyed several parcels to the City of Seaside, subject to reversionary clauses requiring the property to be used for municipal purposes. The city later conveyed the property to a private citizen for the construction of a nursing home. Some 20 years later, the property was sold to defendant, who refurbished the property and converted it to apartments. The county, meanwhile, invoked the reversionary clause and initiated this action for ejectment. Defendant counterclaimed to quiet title and for unjust enrichment, alleging, as well, defenses of waiver and estoppel. The trial court entered judgment for the county on the basis of the reversionary clause, ruling that, when the property ceased to be used for the required municipal purposes, it reverted to the county by operation of law. The court also required the county to pay for the value of improvements that defendant made to the property. Defendant now appeals, arguing that the trial court erred in concluding that ownership of the property reverted to the county. We affirm.

The parties have stipulated to the following facts. The property in dispute consists of nine parcels in the City of Seaside to the west of Necanicum Drive, between Eighth and Ninth Avenues. The county acquired the parcels through tax foreclosure in 1927 and 1941.

In 1939, the county conveyed one of those parcels, "Lot 6," to the city, subject to the following reversionary clause:

"[T]he * * * property * * * shall be used * * * by the City of Seaside * * * for municipal purposes and for no other purpose, and in the event that the same shall not be so used or continue to be so used, then said real property and the whole thereof shall revert to and revest in said Clatsop County, without any act of or by said Clatsop County."

In 1961, the county conveyed the remaining eight parcels to the city. At the time, those parcels were mostly under the water of the Necanicum River. The plan was to

drain the water and use the land for street access. Accordingly, at the time of conveyance, the county issued an order that the subject property is

> "to be used solely for the construction of access streets to the River Boulevard and other municipal purposes relating to the use of said Boulevard and streets and if not so used to revert to Clatsop County and the City to reconvey accordingly."

The deed referred to the order and provided that the subject property is

> "to be used solely for the purposes set forth in said order * * *. If said property is not so used same shall revert to Clatsop County and the City of Seaside shall reconvey accordingly."

The effect of that provision was to create in the city a fee simple determinable, with a possible reverter to the county. *Winters v. County of Clatsop*, 210 Or App 417, 420, 150 P3d 1104 (2007).

The city constructed access streets to River Boulevard—now Necanicum Boulevard—and also constructed a municipal pumping station on Lot 6, the parcel that had been conveyed to the city in 1939.

In November 1967, the city conveyed all nine lots—which, with the exception of the pump station, were still unimproved—to GSL Corporation and Gene E. Lynn. The deed required the grantees to construct a nursing home within two years from the date of conveyance, or the property would revert to the city. Within two years, the property was developed as a nursing home, satisfying the condition of the 1967 deed, and the nursing home operated from 1970 to 1989.

In September 1993, defendant purchased the subject property for $300,000. Within one year of the purchase, defendant invested approximately $375,000 to renovate and improve the structure and convert it to apartments, which he has managed and lived in since that time (while also running a Seaside candy store as the "Candy Man"). It is estimated by the county that, since 1968, it has received ad valorem

property taxes of $466,382.65 from defendant and his predecessors.

In July 2004, the county notified defendant that it had recently discovered that the subject property belongs to the county, having reverted pursuant to the terms of the 1961 deed. The county brought this proceeding in August 2005, seeking to eject defendant and to recover damages of $480,000 in lost rents. The county offered to compensate defendant for the value of the improvements, which a commercial appraisal shows have a fair market value of $925,000.

Defendant filed his answer asserting a number of affirmative defenses, as well as counterclaims to quiet title and for unjust enrichment. Among other things, defendant argued that the county waived the reversionary clause by taking no action after learning of the conveyance of the property to defendant's predecessor. He also asserted that, because the county took no action after learning of the conveyance, the county should be estopped from claiming the effect of the reversionary clause. In any event, defendant asserted, the use of the property for a nursing home and for housing satisfied the requirement that the property be used for "municipal purposes," and so the county has no basis for claiming that ownership of the property has reverted. And he asserted that, if nothing else, he should be refunded the property taxes that he paid to the county during his possession of the property.

The trial court determined that the subject property had reverted to the county by virtue of the reversionary clause of the 1961 deed. It rejected defendant's counterclaims and affirmative defenses and ordered defendant to surrender the property and tender to the court a quitclaim deed conveying it to the county. The court also ordered the county to pay defendant $925,000 for the fair market value of the improvements, less costs of $266 and the fair market rental value of the land, which it found to be $92,550.21, for net judgment of $832,183.79.

■ In his first assignment of error, defendant contends that the trial court erred in rejecting his affirmative defense of waiver. He asserts that evidence concerning the Clatsop

County Commission's action after it learned of the city's transfer of the subject property to GSL and Lynn requires the conclusion that the county waived the reversionary clause in the 1961 deed. The county responds that there is no evidence that the county intentionally waived its reversionary interest in the property. We conclude that, when the property was put to a use other than the specific municipal purpose of constructing and maintaining access streets, the reverter was triggered by operation of law. Accordingly, by the time that the alleged waiver had occurred, the reversion already had occurred, and there was nothing for the county to waive.

The county's authority to transfer public lands is governed by ORS 271.300 through 271.445. ORS 271.310 describes the procedure for the transfer of public lands no longer needed for public use. At the relevant time, ORS 271.330(1) (1965) provided that public land no longer needed for public use could be transferred to another governmental body, "providing such property shall be used and continue to be used, for a public purpose[.]" As the Supreme Court explained in *School Dist. No. 1 v. Multnomah County*, 164 Or 336, 344, 101 P2d 408 (1940), the provisions of the statute are as effective and controlling as if they were expressly a part of the deed. If the condition of use for a public purpose is not satisfied, the deed is cancelled by operation of law and the property reverts automatically to the grantor. *Winters*, 210 Or App at 420.

In addition to the statutory requirements for the conveyance of public lands, the county's deed to the city also contained a restriction: It required that the property "be used solely for the construction of access streets to the River Boulevard and other municipal purposes related to the use of said Boulevard and streets." The city's requirement in the 1967 deed that the property be developed as a nursing home violated the condition in the 1961 deed that the property be used solely for municipal purposes related to the use of roads, and that violation triggered the reverter. Accordingly, the property reverted to the county by operation of law in 1967. *Winters*, 210 Or App at 420.

The city did not inform the county before it deeded the subject property to GSL and Lynn in 1967. Even assuming, however, that it had done so and that the county could

have waived the reversionary interest at that time,[1] *but see City of Mosier v. Hood River Sand*, 206 Or App 292, 319, 136 P3d 1160 (2006) (local government cannot waive requirements of the law), it could not have waived the reverter after the property reverted to the county by operation of law. As a consequence of the reverter, the county held the property in fee in 1967. Directly on point in that regard is *Winters*, in which Clatsop County deeded another parcel to the City of Seaside subject to the same reverter, that is, that the property was to be used for the construction of access streets. Years later, the city deeded the property to Winters for her private use. The city did not inform the county that it had deeded the property to Winters. Years after that, the county learned of the sale and asserted its interest in the property under the reverter. 210 Or App at 419-20. We held that the sale of the property to Winters "triggered an automatic reversion of the title to Clatsop County." *Id.*

We conclude therefore that, even assuming that—as defendant asserts—the county intended by its inaction to waive the reverter, such an intention was without legal effect to convey an interest in the property to the 1967 grantees.

■ In his second assignment of error, defendant contends that the county should be estopped to assert its title to the subject property. In defendant's view, by not making its interest in the property known to defendant or his predecessors and by assessing taxes, the county misled defendant to believe that he had rightful ownership of the property, thereby causing defendant to act to his detriment by improving the property. Defendant asserts that the county's conduct or inaction is sufficient to estop the county from asserting its

---

[1] In 1999, the legislature adopted ORS 271.335, which provides:

"Any political subdivision, by resolution adopted by the governing body of the political subdivision, may waive and relinquish any reversionary interest held by the political subdivision in property transferred under ORS 271.330 when the transfer occurred not less than 20 years prior to the date on which the resolution is adopted."

Additionally, ORS 105.772(1) now provides that a right of reverter in existence on January 1, 1978, is extinguished unless renewed as provided in that section. The provision does not apply "to conveyances made in favor of" the state or any unit of local government. ORS 105.774.

interest in the property. The county responds that its inaction and its tax assessments are not sufficient to estop it from asserting its interest in the property. The county is correct.

■ The Supreme Court has held that a governmental body's "tacit acquiescence" to an assertion of dominion over public lands by a private party will not estop the government body from later asserting its interest in those lands. *Coos County v. State of Oregon*, 303 Or 173, 185-88, 734 P2d 1348 (1987); *City of Molalla v. Coover et ux.*, 192 Or 233, 248-49, 235 P2d 142 (1951). Additionally, the assessment of taxes does not give rise to an estoppel, unless the party seeking the estoppel acquired the property from the county or is in privity with one who did, or responsibility for the tax assessment can be ascribed to an officer possessing authority to affect the county's title to the land. *Coos County*, 303 Or at 185. Defendant established none of those prerequisites. We therefore reject his contention that the county is estopped to assert its interest in the property.

■ In his third and fourth assignments of error, defendant contends that the use of the property for a nursing home and for housing did not trigger the restriction in the 1961 deed that the property be used for "municipal purposes." The county responds that, while it is at least arguable that the use of the property for a nursing home was a municipal purpose, there is no basis for finding that the use of the property for private apartments is as well. We conclude that both parties have missed the point, which is that the 1961 deed requires that the property be used not merely for a municipal purpose, but "solely for the construction of access streets to the River Boulevard and other municipal purposes related to the use of said Boulevard and streets." As we have already noted, there is no dispute that the use of the property either for a nursing home or for apartment dwellings fails to comply with that very specific restriction.

■ In his final assignment of error, defendant contends that the trial court erred in denying his counterclaim for unjust enrichment based on the assessment of ad valorem property taxes. In defendant's view, if the county is correct that it owns the property, it had no right to collect taxes, and defendant is entitled to restitution of the taxes paid on the

property since he purchased it. The county responds that public property is taxable when a private party is in possession of it. In any event, the county contends, to the extent that defendant may be entitled to a refund of any taxes paid, there are statutory procedures by which he can obtain such a refund, none of which defendant has yet invoked.

We need not determine the extent to which defendant is entitled to a refund of taxes paid to the county. As the county observes, there are statutory provisions for the refund of real property taxes collected in error. *See, e.g.*, ORS 311.806 (setting out refund procedure). It does not seem fair to us for the county to take defendant to task for not yet having pursued that remedy; after all, it was the county that initiated this action for ejectment from property that defendant believes he still owns. Still, given the availability of a statutory remedy, it seems inappropriate to grant defendant the equitable relief that he seeks. We conclude that the trial court did not err in rejecting his claim for unjust enrichment.

Affirmed.