Argued and submitted January 16, reversed on appeal and cross-appeal and remanded July 29, 2009

Stanley S. STONIER, III,
and Delorea Stonier, aka Dolores Stonier,
*Plaintiffs-Respondents*
*Cross-Appellants,*

*v.*

John S. KRONENBERGER,
*Defendant-Appellant*
*Cross-Respondent,*

*and*

Walter N. KRONENBERGER,
*Defendant.*

Klamath County Circuit Court
0504390CV; A134455

214 P3d 41

Ginger Lee Harris argued the cause and submitted the briefs for appellant - cross-respondent.

George W. Kelly argued the cause and filed the brief for respondents - cross-appellants.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiffs initiated this quiet title action, seeking a declaration that an easement that was created by deed allowing defendant to use a stretch of their property for access to a land-locked portion of defendant's property was either extinguished by adverse possession or abandoned. The trial court determined that the original easement over plaintiffs' property was, in fact, extinguished. But the court also concluded that defendant acquired an alternative, narrower easement over a different portion of plaintiffs' property by prescription. Defendant appeals, arguing that the court erred in determining that the original easement had been extinguished and in unreasonably limiting the scope of the new easement. Plaintiffs cross-appeal, arguing that the court erred in determining that defendant acquired an alternative easement across their property. On *de novo* review, we conclude that the parties are correct. The court erred in determining that defendant's easement was extinguished and also erred in determining that defendant had acquired an easement by prescription. We accordingly reverse on both the appeal and the cross-appeal.

## I. FACTUAL BACKGROUND

Defendant's[1] and plaintiffs' parcels derive from a common grantor. The disputed easement was created by deed in 1977. Defendant acquired his property in 1998. It consists of 700 acres in rural Klamath County and is bisected by the Sycan River, which runs north and south. Approximately 300 acres of defendant's property is east of the river (the back parcel), and that portion is land-locked by plaintiffs Stanley and Delores Stonier's property to the east. In the summer months, when the river is low, defendant can drive across the river to gain access to the back parcel. During the winter months, however, high water prevents defendant from fording the river, and, without the disputed easement, he has no access to the back parcel.

---

[1] John Kronenberger's brother, Walter Kronenberger, was also named as a defendant, but he has not appeared.

-- Not to Scale --

Defendant's deed includes an easement for ingress and egress across what is now plaintiffs' property, effectively connecting the back parcel to a county road.[2] Defendant has used the easement to service a pump in the river, to maintain fences, and to manage cattle. Defendant's deed describes the easement as 60 feet in width and 1,200 feet in length, running east and west along the northern boundary of plaintiffs' 160-acre parcel. The easement runs through a pasture, and its northern boundary is fenced for its entire length along the northern boundary of plaintiffs' property. In 1996, plaintiffs' predecessor built a second fence that runs the entire length of the easement, parallel to the north fence and approximately 100 feet to the south. Thus, the easement is enclosed by the north and south fences, but it occupies only the northern 60 feet of width of the enclosed area.

It is undisputed that, approximately 200 feet from the easement's eastern boundary, a house, garage, and outbuildings occupy most of the width of the easement for approximately 150 feet of its length. The house and garage have been in that same location for at least 60 years, well

---

[2] There is apparently another easement over a neighboring parcel connecting defendant's easement to the county road.

before the creation of the easement and well before either party to this litigation acquired their properties.[3] As written, the easement encompasses and runs through the house and garage. *See Shoulderblade v. Osborn*, 60 Or App 12, 16, 652 P2d 836 (1982).

Defendant acquired his property from Russell Walsh, who had owned it since 1978. The easement, which had been obtained by Walsh's predecessor in 1977, was in Walsh's deed. Walsh testified that he used the easement seasonally but infrequently to gain access to his irrigation pump on the river.

Although the house has been lived in over the years, for much of the time since 1977, it was unoccupied or occupied only seasonally. However, plaintiffs put on evidence that, for many years—from at least 1977 through 1990—a "yard fence" surrounded the curtilage and extended the entire width of the easement. The yard fence had only a narrow gate, which plaintiffs contended would have made vehicular travel through the curtilage area difficult, if not impossible. The precise location of the fence, however, is not entirely clear; the only maps in evidence are hand-drawn sketches, most of which do not include a yard fence at all. (One hand-drawn map shows a squiggly line designated as a "yard fence," but the fence shows breaks in its length, and it is not drawn to scale.[4]) Defendant testified, meanwhile, that the yard fence did not exist at all when he acquired his property, that the house was vacant, and that he was able to travel with a vehicle within the curtilage area by driving around the buildings and junk piles that are scattered throughout the curtilage. Moreover, defendant's predecessor, Walsh, testified that, from 1978 to 1998, the fence did not impede his use of the easement; he testified that he would simply swing to the south, around the curtilage, or go around the house, but within the 60-foot easement.

---

[3] For a discussion of the easement's creation, see this court's opinion in *Shoulderblade v. Osborn*, 60 Or App 12, 652 P2d 836 (1982) (reforming deed on ground of mutual mistake to include easement).

[4] And the squiggly lines are not in the original exhibit that was received into evidence at trial. On the original, what apparently is supposed to be a fence (there are no labels) is drawn with a yellow highlighter and includes several cross-hatches that appear to signify gates of indeterminate width.

Plaintiffs acquired their property, the servient estate, in 2000. There is no dispute that their deed states that their interest is subject to defendant's easement. In September 2002, plaintiffs began renting the house to the Lubbes. To enclose a pasture for his horses, David Lubbe built a barbed wire fence across the entire width of the easement, to the west of the curtilage, with a gate suitable for the passage of horses, but too small for vehicles. To reach his back parcel by way of the easement, defendant has been required to travel outside of the easement in the area of the curtilage, south of the south fence, past the horse enclosure, and then return north to the easement to continue west to the back parcel.

At around that same time, defendant began working with the United States Fish and Wildlife Service on several river restoration projects, including one project on the Sycan River, which, as we have noted, bisects defendant's property. Funding for the river restoration project became available in 2004, with a projected start date in June 2007. With that goal in mind, defendant, who was the contractor for the project, desired to improve the easement so that it could be used to transport the large quantities of rock, dirt, and gravel that would be necessary for the river restoration.

In 2005, defendant began to attempt to improve the easement with rock so that it could bear the weight of vehicles transporting equipment and materials to the river. In the fall of 2005, defendant suggested to plaintiff Stanley Stonier that the house and garage might need to be removed so as to allow him to build up the road. Plaintiffs objected. Nonetheless, defendant began to lay rock over the accessible portions of the curtilage and to remove fencing that obstructed his passage. When plaintiffs objected, this litigation ensued.

In October 2005, plaintiffs filed their complaint, seeking a determination that the easement had been extinguished by adverse possession as a consequence of the continuous presence of the house and garage, which they asserted effectively blocked defendant's access. At trial, plaintiffs also asserted that defendant's predecessors had abandoned the easement through nonuse and an expressed intention to abandon it. Defendant answered, denying that the easement

had been extinguished. In his answer, defendant did not assert the existence of an alternative easement outside of the original easement that was created by deed.

After hearing the evidence, the trial court announced its decision from the bench. The court ordered "that the easement move over so it doesn't go through the house, the curtilage." Defendant, the court explained, is "going to be able to drive down the road like he's done for whoever's done for the last 25 years, it's just not going to be over there where it was." The court concluded that plaintiffs'

> "theory of adverse possession of the easement is valid. That they've adversely possessed the 60-foot easement and so now they have that back. But [defendant] has a prescriptive easement for the roadway that he's been using so that he can get back there to his property. But it won't be 60 feet wide."

The court concluded that the new easement, created by prescriptive use, is 30 feet wide, located just south of the original easement. The court limited the use of the new easement to servicing the pump and wheel line on defendant's property to the east of the Sycan River. The court further limited the use of the easement to periods when it is not possible to ford the Sycan River and disallowed use of the easement during periods of wet soil conditions, when plaintiffs' grasslands would be damaged by defendant's travel. It also ordered that defendant not gravel the new easement. The court later entered a judgment incorporating its decision on the extinguishment of the original easement and the recognition of the new easement.

## II. ANALYSIS

On appeal, defendant challenges the trial court's determination that his express easement was extinguished by adverse use. He further challenges the court's restrictions on the prescriptive easement prohibiting its improvement and limiting its use during wet periods, when defendant claims it is most needed. Plaintiffs defend the court's determination that the easement was extinguished by adverse possession. They also contend that the court's ruling should be upheld on the alternative theory that defendant's predecessors abandoned the easement. In their cross-appeal,

plaintiffs assert that the court erred in determining that defendant had acquired an easement by prescription.

## A. *Extinguishment of the easement by adverse possession*

■■ We begin with the question whether plaintiffs have established that defendant's express easement was extinguished by adverse possession. To establish adverse possession of an easement, the claimant must show that his or her use of the property was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period, and that the use was inconsistent with the use of the easement by the owners of the dominant estate. *Faulconer v. Williams,* 327 Or 381, 387, 964 P2d 246 (1998); *Slak v. Porter,* 128 Or App 274, 278, 281, 875 P2d 515 (1994).[5] The party claiming adverse possession must demonstrate each element by clear and convincing evidence. *Thompson v. Scott,* 270 Or 542, 546-47, 528 P2d 509 (1974) (clear and convincing evidence of all elements is necessary for acquisition of easement by adverse possession). The clear and convincing standard requires proof that is "free from confusion, fully intelligible, distinct" and that establishes that the truth of the asserted fact is "highly probable." *Shields v. Villareal,* 177 Or App 687, 693-94, 33 P3d 1032 (2001) (citing *Riley Hill General Contractor v. Tandy Corp.,* 303 Or 390, 407, 737 P2d 595 (1987)).

Focusing on the 150-foot stretch of the 1,200-foot long easement containing the house and its curtilage, plaintiffs assert that their evidence establishes conclusively that—for the years between 1977 and 1990—plaintiffs' predecessors' house, garage, junk, trees, chicken coop, and "yard fence" completely obstructed travel through the curtilage area of the easement.

We are not persuaded that the mere existence of the house, garage, junk, trees, and chicken coop suffice to establish, by clear and convincing evidence, that plaintiffs adversely possessed defendant's easement. To begin with,

---

[5] ORS 105.620(1)(b) also requires proof that the claimant have an "honest belief" that the claimant is the true owner, but that statute applies only to claims in which the period of adverse possession necessary to establish prescription extends beyond January 1, 1990. Or Laws 1989, ch 1069, § 4. In this case, plaintiffs contend that the period of prescription was completed in 1989 and that, as a result, the statute does not apply.

those obstructions were in existence at the time that the easement was created. Plaintiffs do not explain, and we do not understand, how the continued existence of structures that were in place at the time the easement was created demonstrates that the easement was extinguished by prescriptive use. More important, there is evidence that, during the period that plaintiffs claim their prescriptive use, defendant's predecessors continued to travel the length of the easement by simply winding his way around the buildings and junk piles.

As for the "yard fence," which plaintiffs insist ran the full width of the easement, the evidence is simply too much in dispute for us to say that plaintiffs satisfied their burden of persuasion. The testimony is conflicting as to whether it completely blocked access to the easement. As we have noted, there was testimony that the fence, when it did exist, did not prevent the use of the easement. Both defendant and Walsh testified that defendant simply went around the structures that plaintiffs contend blocked access to the easement. Moreover, the hand-drawn sketches of the property simply do not demonstrate that the fence would have blocked defendant's access. In short, plaintiffs did not carry their burden of proving that defendant's easement was extinguished by adverse possession, and the court erred in reaching a contrary conclusion.

B.  *Abandonment of the easement*

We turn to plaintiffs' argument that the easement was nonetheless extinguished by abandonment. Abandonment is established by evidence of nonuse, together with conduct inconsistent with an intention to make further use of the easement. *Powers et ux v. Coos Bay Lumber Co.*, 200 Or 329, 398, 263 P2d 913 (1954). Evidence of lack of use alone, however, does not suffice. As the Supreme Court explained in *Powers*,

> "[n]on-user alone does not suffice to extinguish an easement. The owner of a servient estate, who seeks to rid the latter of an easement through a claim of abandonment, must prove, not only non-user, but also that it was the intention of the grantee of the easement to make no further use of it."

*Id.* (citation omitted). In a similar vein, the general rule appears to be that evidence of a deviation from a given way, by itself, is not sufficient to prove abandonment:

> "A right-of-way, whether acquired by grant or prescription, is not extinguished by the habitual use by its owner of another way, equally convenient, unless there is an intentional abandonment of the former way. The use of another way even though unlawful will not terminate the right to the easement."

George W. Thompson, 2 *Thompson on Real Property* § 443, 735 (1980). Like adverse possession, abandonment must be established by clear and convincing evidence. *Shields*, 177 Or App at 693-94.

In this case, plaintiffs contend that they established that defendant's predecessor abandoned the easement that was created by deed. According to plaintiffs, defendant's predecessor's use was infrequent at best. Moreover, they contend, when he used the easement, he used "only a portion." In that regard, plaintiffs refer to the fact that, when defendant's predecessor got to their house and "yard fence," he "simply left the easement, crossed the open fields and, once pas[t] the obstructions, returned to the easement." Plaintiffs refer to no other evidence of abandonment of which we are aware.

The evidence on which plaintiffs rely is simply too little to satisfy their burden of persuasion. As we have noted, evidence of nonuse, by itself, is insufficient to establish abandonment. In this case, plaintiffs do not even rely on nonuse, only on what they describe as "infrequent" use. Absent from the record is any evidence of an intent to abandon. They also note that, at least as to the area contained within the "yard fence," defendant's predecessor "simply left the easement." But, even according to plaintiffs' own account, defendant's predecessor returned to the easement after making a brief detour around the fence. Aside from that, as we have noted in our discussion of the adverse possession claim, from the conflicting testimony on the point, it is not at all "clear and convincing" that the "yard fence" constituted the complete obstruction that plaintiffs contend. On *de novo* review, we therefore conclude that plaintiffs failed to establish that defendant's predecessor abandoned the easement that was

created by deed over their property and that, as a result, abandonment does not provide an alternative basis for affirming the trial court's decision.

## C. *Cross-appeal: Creation of an alternative easement by prescription*

■ On cross-appeal, plaintiffs contend that the trial court erred in determining that defendant has a prescriptive easement over a 30-foot width of land parallel to and immediately south of the south fence, continuing to defendant's property, for ingress and egress. Plaintiffs contend that, in the absence of any pleading by defendant seeking a prescriptive easement, the court lacked authority to award such relief. Plaintiffs are correct.

Directly on point in that regard is *Shumate v. Robinson*, 52 Or App 199, 627 P2d 1295 (1981). In that case, the plaintiff brought suit to quiet title to her property. The defendant alleged ownership of the property by, among other things, adverse possession. The trial court rejected the defendant's claims of ownership and found that title to the lot in dispute remained in the plaintiff. The court, however, then entered a decree, *sua sponte*, awarding the defendant a nonexclusive prescriptive easement for ingress and egress over a portion of the disputed lot. The plaintiff appealed, and this court reversed. "Easements by prescription are not favored by the law," we explained. *Id.* at 204. We continued:

> "It seems entirely reasonable to us that if a person desires to assert a claim not favored by the law, at a minimum he should be required to give notice in his pleadings that he is specifically asserting such a claim. * * *
>
> "* * * * *
>
> "The broad power of a court of equity should not be invoked to shape a decree which was not reasonably contemplated by the parties and which, as here, represents a substantial departure from the pleadings and the legal theories relied upon by the parties."

*Id.* at 204-05; *accord Harrell v. Tilley*, 201 Or App 464, 478 n 11, 119 P3d 251 (2005) (neither the trial court nor this court is authorized to recognize prescriptive easement in the absence of pleading alleging such a claim); *Port of Morrow v.*

*Aylett*, 186 Or App 70, 76, 62 P3d 427 (2003) (court of equity does not have authority to grant relief beyond the scope of the pleadings).

In light of our determination that the trial court erred in recognizing a new prescriptive easement, we need not address defendant's contention that the court erred in imposing what defendant regards as unreasonable limitations on that easement.

Having determined that defendant retains his easement for ingress and egress, questions remain concerning the scope of the easement and whether it is permissible for defendant to develop it so that it can withstand the traffic of heavy equipment and materials necessary for the river restoration project. The trial court did not have occasion to address those questions. Defendant argues on appeal that his deeded easement includes a right to ingress and egress year-round for farming, ranching, conservation, and other legal purposes, and should include the right to expand the easement for conservation purposes. Defendant's arguments concerning the scope of the deeded easement can be made to the trial court on remand.

Reversed on appeal and cross-appeal and remanded.