Argued and submitted November 20, 1979, affirmed
February 5, reconsideration denied March 13,
petition for review denied May 1, 1980 (289 Or 71)

WERNER, et ux,
*Respondents,*

*v.*

BROWN,
*Appellant.*

(No. 77-6984, CA 13958)

605 P2d 1352

David Brewer, Eugene, argued the cause for appellant. With him on the briefs were Herb Lombard and Lombard, Gardner, Honsowetz, Johnson & Brewer, Eugene.

Steven L. Philpott, Eugene, argued the cause for respondents. With him on the brief was Armstrong & Philpott, P. C., Eugene.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

Buttler, P. J.

## BUTTLER, P. J.

Defendant appeals from the judgment in favor of plaintiffs in their suit to quiet title to a piece of land along the McKenzie River, in which suit defendant asserted a counterclaim based on adverse possession of the same piece of land for the requisite period. We affirm.

The property in question is a portion of a piece of land along the McKenzie River in Lane County which was formed by the process of accretion subsequent to 1882, when the Government Land Office established a meander line on the south bank of the river, which was the original northern boundary of the property owned by the plaintiffs, defendant and their neighbors, the Dehnes. This accreted land is shown on the following diagram with horizontal lines. The property in dispute is a four-sided piece of property shown on the diagram as cross-hatched and bounded by lines AC-CD-DE-EA.

[321]

Defendant and the Dehnes, and the predecessors of both, have used portions of the accreted land at least since the 1920's. Plaintiffs' predecessors apparently considered their boundary to be a fence which ran approximately along the line XB on the diagram, although the record is not clear on this point. There is evidence that they did not use or claim the disputed property as far back as any witnesses could recall; however, Mr. Dehne testified that on several occasions he had asked plaintiffs' predecessors if they were going to run cattle on the accreted land north of the XB line, and that on one occasion the then owner of plaintiffs' property, Mr. Smith, put a fence on the accreted land north of the XB line. On that occasion, Mr. Dehne asked Mr. Smith if he planned to run cattle back there and was told by Smith that part of the fence was washed out and that the Dehnes and Browns could run their cattle on the land.

Defendant became familiar with the property in about 1923 when she met her husband-to-be, whose family owned the land at that time. She and her husband moved onto the property in 1935. They used the accreted land for grazing cattle and horses, and perhaps sheep, without any particular regard to any boundary. They picked blackberries, cut the bushes back when necessary and cleaned up debris after floods, which were not uncommon in the winter season. They also sowed oats on part of the accreted land but, so far as the record discloses, not on the disputed portion.

The Dehnes and their predecessors made similar use of the other end of the accreted land. Both defendant and Mr. Dehne testified that each owned one end of the accreted parcel, but Mr. Dehne's testimony, taken as a whole, is not consistent. At least once he referred to the accreted land as "open range" and it seems probable that he considered it that way until about the time it was resolved that the state did not own it. That resolution evolved out of a dispute

between the Dehnes and plaintiffs beginning about 1967. In 1971, Mr. Dehne put a fence along a line between D and X. Shortly thereafter he settled on the X-Y line as being the boundary between his property and that of plaintiffs, and put a fence along that line. It is clear, in any event, that the Dehnes at no time claimed any interest beyond their western boundary, wherever that boundary was, and claimed no interest in the disputed land.

Defendant testified that her eastern boundary ran somewhere near a line from X to Y on the diagram; Mr. Dehne agreed that his boundary extended to that approximate line, which was the line the Dehnes had settled on in their dispute with plaintiffs.

Plaintiffs claim the disputed parcel as the riparian owners of the land to which the disputed parcel accreted. Defendant claims, however, that she acquired that parcel by adverse possession. The trial court found that plaintiffs were entitled to a portion of the disputed parcel as the riparian owner, and that defendant had not established her claim by adverse possession. The boundary between plaintiffs' land and that of defendant was determined by the court to be along a line running approximately between points D and B on the diagram.[1]

Parties seeking to establish title by adverse possession must prove that their possession was "actual, open, notorious, hostile, continuous and exclusive, under claim of right or color of title, for a period of ten years." *Grimstad v. Dordan,* 256 Or 135, 139, 471 P2d

---

[1] Neither party has challenged the method used by the trial court in setting the boundary as it did. The court found that the line should be perpendicular to the current high water mark and run to the original high water mark at the point at which it intersects the original east-west boundary of the property of plaintiffs and defendant. However, the court found that there was insufficient evidence to establish the high water mark as it existed when the lots were divided. The court concluded that the boundary would have to be established by some other equitable method and chose the line which forms the south line of tax lot 701 on the county assessment map. This line runs approximately from point B to D on the diagram.

778 (1970); *Beaver v. Davis,* 275 Or 209, 211, 550 P2d 428 (1976); *Russell v. Gullett,* 285 Or 63, 589 P2d 729 (1979). The trial court found that defendant established all of the requirements for adverse possession of the disputed parcel except for exclusivity of possession. From our review of the record, we agree that the required exclusiveness of possession is lacking.

Both defendant and Wilbur Dehne testified that both families ran livestock on the accreted parcel generally. There were no fences or established boundary lines separating the accreted lands owned by plaintiffs, defendant and the Dehnes, nor was there an established line at the west end of the Dehne's property until about 1971 or the east end of the property claimed by defendant. There is no question that the Dehnes and defendant used the end of the parcel bordering their own land. However, there was no established boundary between them, and both used the land in the middle. This case is not one in which strays occasionally crossed a recognized boundary or broke through a fence. *See Norgard et al v. Busher et ux,* 220 Or 297, 349 P2d 490, 80 ALR2d 1161 (1960); *Terry v. Timmons,* 282 Or 363, 578 P2d 405 (1978). Both defendant and the Dehnes ran cattle on the land and, as defendant testified, "they just intermingled." Mr. Dehne testified, as noted above, the land was "open range."

The requirement of exclusive use is not met when two or more persons are in possession of the property.[2] While no Oregon cases have been cited to us, and we have found none, other jurisdictions have dealt with the question. In *Eason v. Samson Lodge No. 624 A. F. & A. M.,* 270 Ala 194, 117 So. 2d 138 (1959), the court stated: "Ordinarily where two parties are in possession of real estate, neither has exclusive, hostile possession." 270 Ala 200, 117 So 2d at 141. The Texas court

---

[2] We need not decide whether two or more persons may establish joint title to land by adverse possession if they jointly possessed the property for the requisite period under circumstances which meet the test.

[324]

in *Humphreys v. Gribble,* 227 SW2d 235 (Tex Civ App, 1950), held that the claimant, who had lived on the disputed land with his daughter and son-in-law, had not exclusively possessed the land. In *State v. Brooks,* 275 NC 175, 166 SE2d 70 (1969), the North Carolina court held that one cannot gain title by adverse possession to unenclosed land by using it for grazing where others made similar use of the land during the statutory period, because the possession is not exclusive. Finally, although the court went on to find that adverse possession had been established in the case, the court in *Broussard v. Motty,* 174 So 2d 246, 249 (La App 1965), stated that "permitting one's cattle to graze on unenclosed land, to which land the cattle of others have access and on which they graze, is not the taking of actual possession of property * * * [required]." *See* 3 Am Jur 2d, Adverse Possession, § 53.

Because defendant's use of the disputed parcel was not exclusive, she has failed in establishing title by adverse possession.

Affirmed.