SHORR, J.
*323 Plaintiff Sherman Hammond and defendant Michael Hammond are brothers who have been litigating over a 49-acre piece of real property in Jackson County since 2009. Defendant lives on the subject property, known as Jackson County Tax Lot 800, and plaintiff lives on an adjacent lot. In a previous case that was twice before this court, it was determined that plaintiff holds title in fee simple to Tax Lot 800. After the decision in that case became final, plaintiff initiated this litigation by filing a claim for ejectment. Defendant responded with a counterclaim for adverse possession and raised a statute of limitations defense. After a bench trial, the trial court entered a general judgment denying both plaintiff's and defendant's claims. The trial court ruled that defendant had not established the boundaries of the property he claimed to have adversely possessed, but found that the 10-year statute of limitations barred plaintiff's claim for ejectment. Plaintiff appeals from the judgment, assigning error to the trial court's ruling that the statute of limitations barred his claim of ejectment. Defendant cross-appeals from the same judgment, assigning error to the trial court's denial of his claim of adverse possession. For the following reasons, we affirm the trial court's denial of plaintiff's claim for ejectment as barred by the statute of limitations, and we also affirm the trial court's denial of defendant's claim for adverse possession.
Because plaintiff's ejectment claim is an action at law, Spears v. Dizick , 235 Or. App. 594, 598, 234 P.3d 1037 (2010), with respect to plaintiff's appeal, we review the trial court's factual findings for any competent evidence to support those findings and its legal conclusions for legal error. McIntyre v. Photinos , 175 Or. App. 478, 482, 28 P.3d 1259 (2001).
Because defendant's adverse possession claim is in equity, id. at 482-83, 28 P.3d 1259, we have discretion to review the trial court's findings of fact de novo . ORS 19.415(3)(b). However, de novo review is generally disfavored and is reserved only for "exceptional cases." ORAP 5.40(8)(c). Defendant requests that we exercise our discretion to review de novo because "the trial court's decision does not comport with uncontroverted evidence in the record." We disagree and decline to *324 take de novo review. Instead, we accept the trial court's findings of fact that are supported by the evidence and review for legal error whether those facts establish the elements of the parties' claims. *411 Sea River Properties, LLC v. Parks , 355 Or. 831, 855, 333 P.3d 295 (2014). We state the following facts consistently with that standard.
The parties' parents originally purchased Tax Lot 800 in 1946 and lived in a home near the southwest corner of the lot. Defendant moved onto Tax Lot 800 around 1973 and has lived in various houses and trailers in the northeast and southwest quadrants of the lot since that time. The parties' other brother, Jerry Hammond, has also lived on Tax Lot 800 in a house on the western side of the lot since 1976. Plaintiff resides on Tax Lot 600-a 43-acre lot immediately south of Tax Lot 800-which he purchased in 1972 and has lived on since 1975.[1]
In 1985, after the death of the parties' father, the parties' mother deeded Tax Lot 800 to plaintiff. Since 1985, plaintiff has paid the property taxes for Tax Lot 800. Plaintiff also performed maintenance on the property, such as brush clearing and mowing, though it is not clear when and where on the property this maintenance occurred. Sometime in 1996 or 1997, defendant moved into his mother's house at his mother's invitation, to provide care for her.
The parties' mother died on October 8, 2001. A few days later, defendant encountered plaintiff outside of a memorial service for their mother and "threw at him" a copy of their mother's will, stating in effect that he was doing so "pursuant to instructions from their mother." The will purported to divide Tax Lot 800 into "four equal parts," and it gave defendant two of the quarters. The will stated, in relevant part:
"I am dividing my realestate [sic ] into four equal parts. Myself controlling one part and each of my three sons controlling one part. [M]aking up a total of four parts. To my son Michael Coleman I leave the fourth of realestate where he now lives (North east quarter) and my quarter where my house sits. (Southwest quarter) I leave my entire house and out buildings and entire contents and all my automobile *325 [i]nterests for being my care-giver for all these years......to my son Michael Coleman........"
The will also purported to give plaintiff the southeast quarter of Tax Lot 800 and "legal control" over the northwest quarter, while Jerry and his wife would receive only "the right to pass to and from where he now lives and the blessing of living there for life." While some other personal property is mentioned in the will-namely, the house and its contents, outbuildings, and automobile interests that were to go to defendant-the vast majority of the nine-page document is intended to divide and devise Tax Lot 800.
The parties had no further direct communication about the will until 2009. Plaintiff discussed the will with his wife, and plaintiff testified that he became aware that defendant claimed an ownership interest in Tax Lot 800 in 2001, when he read the will. Plaintiff and his attorney engaged in the following colloquy at trial:
"Q. Until the septic incident in 2003/2004, did you have any idea that [defendant] was claiming some kind of ownership interest in the property?
"A. The only kind that I saw was on the will.
"Q. Okay.
"A. If that was a claim, I guess.
"* * * * *
"Q. And when was the first time that you saw this will that got entered into the probate case?
"A. I think the day after she-my mom died, or the second day."
Plaintiff's attorney posed the same question to plaintiff's wife, and she gave a similar answer:
"Q. * * * [D]id you ever discuss with [plaintiff] the fact that [defendant] was making a claim of ownership of tax lot 800?
"A. Yes. Probably, yeah.
"Q. And when did that issue first arise, the issue being [defendant] claiming an ownership interest in the real property?
*412 "A. I suppose when we saw the will."
*326 Meanwhile, defendant continued to live in his mother's home on Tax Lot 800 after her death. He began to accumulate large quantities of "junk" around the house. Eventually the accumulation became so great that it blocked the access road to plaintiff's and Jerry's houses. Plaintiff and his wife asked defendant on a number of occasions to remove or organize the "junk," but the condition of the property where defendant lived only worsened. Jerry testified that, because of the block in the road, he had not been to the part of the property where defendant lived since 2002. Plaintiff's wife testified that she stopped going to that part of Tax Lot 800 because she felt intimidated by defendant.
Beginning around 2002, defendant paid plaintiff's wife $ 50 per month for 14 months. The parties never referred to these payments as "rent," and defendant could not say what the money was used for. Plaintiff's wife testified that the money was used for past-due bills that had accumulated since the death of the parties' mother.
In 2003 or 2004, plaintiff discovered a man digging up a septic tank on Tax Lot 800. Plaintiff discovered that defendant had told the man that defendant owned the land and authorized the man to dig up the tank. Defendant continued to live in his mother's house until 2011, when the water was shut off. At that point, defendant moved into a trailer approximately 70 to 100 yards from the house, "[v]ery near the property line."
In March 2009, defendant sought to probate his mother's will. In the course of that litigation, it was ultimately decided that the 1985 deed gave Tax Lot 800 to plaintiff as an inter vivos gift with a delayed right of enjoyment, and thus the devise to defendant in the will had no effect.[2] After that decision became final in 2014, plaintiff filed this action for ejectment. As noted, defendant asserted a statute *327 of limitations affirmative defense and a counterclaim for adverse possession.[3]
After a bench trial, the trial court issued a letter opinion, ruling that defendant had proved adverse possession of "the property" and that plaintiff's claim for ejectment was barred by the statute of limitations in ORS 12.050. Then, upon plaintiff's motion for reconsideration, the trial court issued a second letter opinion in which it reversed its decision on defendant's counterclaim for adverse possession. The trial court determined that defendant had failed to establish the boundaries of the land he claimed to possess, and that the court would be required to "guess at setting the boundary lines." The court observed that defendant's claim at trial appeared to be coextensive with the gift in his mother's will:
"[H]e appeared to maintain that the property he was claiming by adverse possession was coextensive with the portion of the property that was bequeathed to him in his mother's will. Although the contents of the will were relevant on the narrow issue of notice, and this is the case only because a copy of it was provided to Plaintiff, the will has no relevance on the issue of exclusive possession. It might have been relevant if, for example, Defendant had testified that he tried to keep everybody out of the area within Tax Lot 800 his mother attempted to give him in her will, but he did not provide such testimony."
Moreover, the trial court found that defendant had not overcome evidence that plaintiff regularly maintained Tax Lot 800. The trial court explained that defendant's failure to address this evidence precluded a finding that defendant had exclusively possessed Tax Lot 800.
As for plaintiff's ejectment claim, on reconsideration, the trial court reaffirmed its ruling that the statute of limitations had run. The court reasoned as follows:
*413 "[A]fter listening again to Plaintiff's testimony, I heard him very clearly say that when he was investigating Defendant having authorized a neighbor to dig up the septic system on *328 the property, the neighbor justified his actions by stating '[defendant] said that he owned the property.' This is an additional finding I make further supporting that Plaintiff was on notice more than ten (10) years prior to filing his ejectment claim that Defendant was asserting an ownership interest in the property."
The trial court then entered a general judgment denying both plaintiff's and defendant's claims. Plaintiff now appeals from the general judgment. Defendant cross-appeals from the same judgment.
We begin with defendant's cross-appeal. Defendant assigns error to the trial court's denial of his adverse possession claim, arguing that the court erred in concluding that defendant failed to establish the boundaries of the property that he claimed to have adversely possessed. Defendant argues that his mother's will and the trial testimony regarding his use of the property was sufficient to establish that defendant adversely possessed a portion of the southwest corner of Tax Lot 800 "at minimum from a point beginning at the point where the road was purposely blocked and continuing to the property line and to Elk Creek Road." In response, plaintiff argues that defendant never pleaded that he claimed only a portion of the property, and that the trial court correctly concluded that defendant offered no evidence of the boundary lines of the geographic area he claimed.
To establish adverse possession, a claimant must show by clear and convincing evidence that his or her use of the property-or that of a predecessor in interest-was "actual, open, notorious, exclusive, hostile, and continuous" for a period of 10 years, that the claimant had an "honest belief" that he or she was the actual owner of the property throughout the vesting period, and that that belief was objective and reasonable under the circumstances. ORS 105.620 ; Case v. Burton , 250 Or. App. 14, 22-23, 279 P.3d 259 (2012) (stating the legal standard for adverse possession and explaining the common law and statutory background of the doctrine). That includes proving by clear and convincing evidence the boundaries of the property adversely used. Case , 250 Or. App. at 23, 279 P.3d 259. The clear and convincing evidence standard is a heavy burden for a claimant to meet, as it requires "proof that is 'free from confusion, fully intelligible, *329 distinct' and that establishes the truth of the asserted fact is 'highly probable.' " Stonier v. Kronenberger , 230 Or. App. 11, 18, 214 P.3d 41 (2009) (quoting Shields v. Villareal , 177 Or. App. 687, 693-94, 33 P.3d 1032 (2001) ). Here, the trial court found that defendant did not sufficiently identify the area of adversely possessed property. Because, as explained below, that finding is supported by evidence in the record, we affirm the trial court's conclusion that defendant did not prove his adverse possession claim.
In its opinion letter on reconsideration, the trial court found that defendant
"did not allege in his answer over what area he was seeking ownership by adverse possession. He did not clarify his position through his trial testimony. In that regard, he only provided a general location of his trailer/RV and he did not attempt to describe the boundaries of the land within Tax Lot 800 he claimed to exclusively possess. Nor did he offer a survey or attempt to establish the boundary of the property he was claiming by landmarks, physical characteristics of the property, signage or the like.
"During the trial, Defendant * * * appeared to maintain that the property he was claiming by adverse possession was coextensive with the portion of the property that was bequeathed to him in his mother's will. Although the contents of the will were relevant on the narrow issue of notice, and this is the case only because a copy of it was provided to Plaintiff, the will has no relevance on the issue of exclusive possession. It might have been relevant if, for example, Defendant had testified that he tried to keep everybody out of the area within Tax Lot 800 his mother attempted to give him in her will, but he did not provide such testimony."
*414 The trial court's findings are supported by the record. In his pleadings, defendant claims adverse possession of "the property," a term that was defined in plaintiff's complaint as the entirety of Tax Lot 800.[4] However, *330 as defendant concedes on appeal, defendant has sought to establish adverse possession of only the southwest quarter of Tax Lot 800 that was coextensive with one of the quarters purportedly bequeathed to him in his mother's will. As to that claim, there is evidence in the record that supports the trial court's ruling that defendant did not establish by clear and convincing evidence each element of adverse possession for a defined area of the southwest quarter of Tax Lot 800.
For instance, the record is devoid of evidence showing that defendant actually used the entirety of the southwest quarter, which was approximately 12 acres of Tax Lot 800.[5] "The element of actual use is satisfied if a claimant establishes a 'use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited.' " Stiles v. Godsey , 233 Or. App. 119, 126, 225 P.3d 81 (2009) (quoting Allison v. Shepherd , 285 Or. 447, 452, 591 P.2d 735 (1979) ). Defendant presented no evidence that he had used any land beyond his mother's former residence and the area immediately surrounding it since he moved in with his mother in 1996 or 1997. The trial court found only that defendant occupied his mother's former residence from the time his mother died in 2001 until around 2011, when he moved into a nearby trailer, and that he collected massive quantities of "junk" in the area "around the family home." Because there was no evidence that defendant used, let alone adversely possessed, an established area outside the immediate area of the residence, the trial court did not err in denying defendant's claim of adverse possession to the southwest quarter of Tax Lot 800.
For the first time on appeal, defendant argues that the area he adversely possessed within the southwest quarter is identifiable as "at minimum from a point beginning at the point where the road was purposely blocked and continuing to the property line and to Elk Creek Road." With respect to any smaller area within the southwest quarter, the record supports the trial court's finding that defendant *331 did not sufficiently identify the boundaries of that portion of the property. Defendant presented no evidence regarding the location of the block in the road in relation to the property line or Elk Creek Road. The trial court reasoned that it "would be required to guess at setting the boundary lines of the property within Tax Lot 800 that Defendant claims he exclusively possessed over the requisite ten (10) year period." Defendant did not meet his burden to establish by clear and convincing evidence the property he adversely possessed. Therefore, the trial court did not err in rejecting defendant's counterclaim for adverse possession.
We turn to plaintiff's appeal. Plaintiff raises two assignments of error, both of which relate to the trial court's denial of his claim for ejectment as barred by the 10-year statute of limitations in ORS 12.050. Plaintiff argues that the trial court erred in determining that defendant's words and conduct constituted sufficient notice of ouster by 2003. Defendant responds that the court correctly concluded that plaintiff was on notice that defendant claimed an ownership interest in the property by 2001, when defendant gave plaintiff a copy of the will, or at the latest by 2003 or 2004 when plaintiff saw someone digging up the septic tank, which defendant had authorized.
*415 The parties agree that ORS 12.050 is the applicable statute of limitations for plaintiff's ejectment claim.[6] The parties disagree, however, about when the statute began to run on plaintiff's claim. Defendant argues that the "discovery rule" applies to the commencement of the 10-year limitation period provided by ORS 12.050 and that, therefore, the statute began to run on plaintiff's claim when plaintiff knew, or reasonably should have known, of the right to eject defendant from the property. Accordingly, defendant argues that plaintiff's claim accrued in 2001, when defendant threw a copy of the will at plaintiff, or at the latest by the 2003 or 2004 "septic tank incident." Plaintiff argues, *332 in essence, that the statute of limitation did not begin to run against plaintiff's claim until defendant's use of the property met the open, notorious, exclusive, and hostile elements of adverse possession, and that defendant did not meet these elements until he filed to have his mother's will probated in 2009. As we will explain, both parties are partially correct.
We first address defendant's contention regarding the application of a discovery rule to ORS 12.050. The discovery rule is a rule of interpretation for statutes of limitations "that has the effect of tolling the commencement of such statutes under certain circumstances." Rice v. Rabb , 354 Or. 721, 725, 320 P.3d 554 (2014). Under the discovery rule, the period of limitation commences either when a plaintiff actually discovers his or her injury or when a reasonable person exercising reasonable care should have discovered his or her injury. Id. The incorporation of a discovery rule into a statute of limitation cannot be assumed; rather, "we apply the statutory [interpretation] methodology established in State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009), to determine whether the legislature intended to incorporate a discovery rule in the pertinent statute of limitations." Rice , 354 Or. at 726, 320 P.3d 554. Accordingly, we begin with the text and context of ORS 12.050, as well as the related statute of ORS 12.010, and the prior case law interpreting those statutes.
ORS 12.050 provides:
"An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear that the plaintiff, an ancestor, predecessor, or grantor was seized or possessed of the premises in question within 10 years before the commencement of the action."[7]
ORS 12.050 and its precursors have been part of Oregon law from before statehood and have remained largely unchanged since the Deady Code. See General Laws of Oregon, Civ.
*333 Code, ch. I, § 4, p. 140-41 (Deady 1845-1864).[8] The text of ORS 12.050 does not itself explain what event triggers the running of the statute.
ORS 12.010 applies to limitation periods set out in ORS chapter 12 and provides that those limitation periods begin to run when the cause of action "accrues." ORS 12.010 provides:
"Actions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute."
In Rice , the Oregon Supreme Court held that ORS 12.010 incorporated the discovery *416 rule as applied to ORS 12.080(4), which provides a limitation period for actions for taking, detaining or injuring personal property. 354 Or. at 728, 320 P.3d 554. The court relied on its longstanding definition of "accrue" from Berry v. Branner , 245 Or. 307, 421 P.2d 996 (1966), to hold that a cause of action accrued within the meaning of ORS 12.010"at the time that [a plaintiff] obtained knowledge, or at the time that a person exercising reasonable care should have obtained knowledge, of the injury negligently caused by the defendant * * *." Rice , 354 Or. at 728, 320 P.3d 554. In other words, because ORS 12.080(4) fell "under the purview of ORS 12.010," which provides that a limitation period prescribed in ORS chapter 12 begins to run upon the accrual of the claim, the limitation period in ORS 12.080(4) was subject to the discovery rule, as that rule had been articulated in Berry . Rice , 354 Or. at 728, 320 P.3d 554.
Following the reasoning in Rice , we have held that the discovery rule also applies to the limitation period in ORS 12.080(3) for claims of an injury to an interest in real property. See Goodwin v. Kingsmen Plastering, Inc. , 267 Or. App. 506, 340 P.3d 169 (2014), aff'd on other grounds , *334 359 Or. 694, 375 P.3d 463 (2016) ; Tavtigian-Coburn v. All Star Custom Homes, LLC , 266 Or. App. 220, 337 P.3d 925 (2014). We do so again here, with respect to ORS 12.050, agreeing with defendant that the discovery rule applies to the statute of limitations for ejectment claims.
By its plain terms, ORS 12.010 applies to the limitations period set out in ORS 12.050. ORS 12.050 provides that an action for the recovery of real property must be commenced "within 10 years," but it does not specify the event that triggers the running of the limitation period. ORS 12.010, in turn, provides that, unless a different limitation period is prescribed by statute, actions "shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued * * *." The threshold question then becomes when a cause of action for ejectment has "accrued."
An action subject to the discovery rule typically accrues "whenever one person may sue another," but not before the plaintiff "has or can reasonably be expected to have knowledge of any wrong inflicted upon her." Berry , 245 Or. at 312, 421 P.2d 996. However, a property owner who has constructive notice of "possible problems" with the owner's title is not required to bring an action to eliminate those problems. Assn. of Unit Owners v. Far West Federal Bank , 120 Or. App. 125, 131, 852 P.2d 218 (1993) (citing Meier v. Kelly , 22 Or. 136, 138, 29 p. 65 (1892) ). Only after an actual repudiation occurs or an adverse claim is asserted against the owner's interest is a landowner required to take legal action to protect that interest. Eichner v. Anderson , 229 Or. App. 495, 500, 212 P.3d 521, rev. den. , 347 Or. 258, 218 P.3d 540 (2009) (citing Oliphant v. French , 256 Or. 341, 472 P.2d 275 (1970), and Assn. of Unit Owners , 120 Or. App. at 131, 852 P.2d 218 ). Therefore, for the purposes of ORS 12.050, an action in ejectment "accrues" when an actual repudiation occurs or an adverse claim has been asserted against a property owner's interest such that the owner knows or reasonably should have known of the repudiation or adverse claim. We agree with plaintiff that the elements of adverse possession define when an actual repudiation or an adverse claim has been asserted, and we are satisfied that, in the circumstances presented here, the *335 point at which plaintiff's action accrued is determined by the well-established law of adverse possession.[9]
Knowledge of an adverse claim is imputed to the owner or legal holder of *417 property when another party shows "actual, open, notorious, exclusive, continuous and hostile use of the property for a ten-year period, under an honest belief that the party is the owner of the property." McIntyre , 175 Or. App. at 483, 28 P.3d 1259 ; ORS 105.620. In other words, the law requires an adverse possessor to "keep his flag flying" on the land in such an open, notorious, and hostile manner that knowledge of the adverse possessor's claim to the land can be imputed to the landowner. Id. at 484-85, 28 P.3d 1259.
Here, the argument between the parties is over the element of hostility. The parties agree that defendant originally came into possession of his mother's residence and the immediately surrounding area with the permission of his mother.[10] Plaintiff argues that, after the parties' mother died, defendant continued to live on the land with plaintiff's permission, and that defendant never communicated his intention to possess the land hostile to plaintiff's ownership interest sufficient to transform defendant's use of Tax Lot 800 from permissive to hostile. As a result, plaintiff contends that he did not have actual or constructive notice of defendant's claim until at least 2009, when defendant sought *336 to probate his mother's will. Defendant argues that he gave clear and unequivocal notice of his intention to continue to reside on the land under a claim of ownership by 2001 or "at the latest by 2003/2004," when he threw the will at plaintiff, hired a third party to dig up the septic tank, and purposely blocked the road to the parties' mother's former residence.
To establish hostility, a "claimant must demonstrate a subjective intent to possess the property intending to be its owner and not in subordination to the true owner." Hoffman v. Freeman Land and Timber, LLC. , 329 Or. 554, 561, 994 P.2d 106 (1999) (internal quotation marks and brackets omitted).[11] It is well established that permissive possession is not adverse.[12] Scott v. Elliott , 253 Or. 168, 178, 451 P.2d 474 (1969) ("Permissive use, no matter how long continued, is not adverse, and when proved, denies the adverse possession."); Fitts v. Case , 243 Or. App. 543, 551-52, 267 P.3d 160 (2011). Thus, the 10-year period does not begin to run, both for an adverse possession claim and for the statute of limitations on an ejectment claim, if a claimant possesses the land with the owner's permission.
Possession of property that starts as permissive can become adverse, if the possessor asserts an ownership interest in the land. Once the possession becomes adverse, then the 10-year period begins to run:
"Where a claimant seeking to establish title by adverse possession originally entered the premises with the permission of the legal owner, his possession is considered in subordination to that of the legal owner and does not start the statutory period running until, by words or conduct, the claimant asserts that he is holding in his own right and brings that assertion to the knowledge of the rightful owner."
*337 *418 McCall v. Hyde , 39 Or. App. 531, 534-35, 592 P.2d 1064 (1979) ; see also Rise v. Steckel , 59 Or. App. 675, 687, 652 P.2d 364, rev. den. , 294 Or. 212, 656 P.2d 943 (1982) (holding that it "was not until * * * defendant refused plaintiff's demand for possession that defendant's words and conduct clearly asserted his intention to possess the residence in his own right").[13] A clear assertion of ownership by the adverse possessor is necessary because, absent such an assertion, the law presumes that a nonowner's possession is subordinate to the legal title holder. Hoffman , 329 Or. at 561, 994 P.2d 106 (citing Laurance v. Tucker , 160 Or. 474, 484, 85 P.2d 374 (1938) ).
Application of the discovery accrual rule is an issue of fact to be decided by the factfinder. T. R. v. Boy Scouts of America , 344 Or. 282, 296, 181 P.3d 758, cert. den. , 555 U.S. 825, 129 S.Ct. 146, 172 L.Ed.2d 40 (2008). Here, the trial court found that defendant had conveyed his position that he owned the property by 2003, identifying three discrete ways that defendant had conveyed this intention. First, the court found that defendant's act of delivering a copy of the will to plaintiff in 2001, together with his accompanying statement, was sufficient to put plaintiff on notice that defendant was claiming an ownership right in the property. Second, the court found that, by 2003, defendant had accumulated so much "junk" that he blocked access to his brothers' homes, and that he refused to remove or reorganize the junk at plaintiff's request. Lastly, the court found that defendant's act of digging up the septic tank without permission conveyed defendant's position that he was the owner of the property described in the will. As explained below, those findings are supported by evidence in the record, and those findings further support the court's ultimate finding that defendant, by words or conduct, communicated to plaintiff that defendant intended to possess, *338 as an owner, the portion of Tax Lot 800 on which defendant resided.
Of most significance, the trial court found that defendant's act of throwing the will at plaintiff, along with defendant's accompanying statement, was sufficient on its own to put plaintiff on notice regarding defendant's claim of ownership. That finding is supported by the evidence in the record. While defendant's statement that he was acting pursuant to his mother's instructions is not particularly elucidating in regard to defendant's intention, other evidence in the record supports the trial court's finding. The will itself was relatively short-only nine pages-and its primary (if not exclusive) purpose was to divide Tax Lot 800 into four equal parts and distribute two of the quadrants to defendant. Defendant's act of throwing the will at plaintiff "must have had the desired effect" of communicating defendant's intended ownership interest, as the trial court found, because both plaintiff and his wife testified that they became aware of defendant's claim of ownership on the land when they read the will.
Additionally, the other significant facts found by the trial court-that defendant blocked the road with his "junk" and authorized someone to dig up the septic tank without plaintiff's permission-are also supported by evidence in the record. Those facts, combined with the mother's will, provide a legally sufficient basis from which the trial court could find that defendant had clearly communicated his intention to possess the land as an owner would by 2003. Therefore, because the court did not err in concluding that plaintiff was on notice of defendant's adverse claim to a portion of Tax Lot 800 by 2003, the court did not err in determining that plaintiff's claim for ejectment was barred by the statute of limitations, ORS 12.050.[14]
*419 Because the trial court did not err in finding that plaintiff was aware that defendant was asserting an adverse *339 claim on a portion of Tax Lot 800 more than 10 years before plaintiff filed his claim for ejectment, we affirm the trial court's denial of plaintiff's ejectment claim as barred by the statute of limitation, ORS 12.050.
Affirmed on appeal and cross-appeal.
*340 APPENDIX 1

A map of Tax Lots 800 and 600 is included as Appendix 1. The map is a modified version of an exhibit that was admitted at trial.

See Hammond v. Hammond , 246 Or. App. 775, 268 P.3d 691 (2011) (reversing the trial court's ruling that the deed unambiguously conveyed Tax Lot 800 to plaintiff in fee simple); Hammond v. Hammond , 262 Or.App. 238, 327 P.3d 572, rev. den. , 355 Or. 879, 333 P.3d 333 (2014) (affirming without opinion the trial court's determination that the deed was an inter vivos gift to plaintiff with a delayed right of enjoyment).

Defendant initially filed his adverse possession claim as an affirmative defense, but the trial court construed defendant's defense as a counterclaim pursuant to ORCP 19 B.

Defendant does not argue on appeal that he, alone, possessed the entirety of Tax Lot 800, nor could defendant plausibly have made such a claim, because it was undisputed that the parties' brother, Jerry, lived on Tax Lot 800 with his family. "The requirement of exclusive use [for an adverse possession claim] is not met when two or more persons are in possession of the property." Werner v. Brown , 44 Or. App. 319, 324, 605 P.2d 1352, rev. den. , 289 Or. 71 (1980).

The parties' mother's will purported to divide Tax Lot 800 "equally" into four quarters, giving one quarter to plaintiff, one to Jerry, and two to defendant. An equal division of the 49-acre Tax Lot 800 would render the southwest quarter to be 12 and one-quarter acres.

A six-year limitation applies when a plaintiff seeks monetary damages for "wrongful withholding." ORS 105.030. Plaintiff sought both declaratory relief and monetary damages in his complaint; however, because the trial court ruled that the 10-year statute barred plaintiff's claim, it did not reach the issue of damages. Issues related to plaintiff's claim for damages, therefore, are not before us on appeal.

The Oregon Supreme Court has explained that the requirement that a party show that he or she was "seized or possessed of the premises" within 10 years is satisfied "where the party opposing an adverse claimant is the holder of the legal title." Evans v. Hogue , 296 Or. 745, 754, 681 P.2d 1133 (1984).

The statutory precursor to ORS 12.050 provided a 20-year limitation period for
"[a]ctions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery, unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the premises in question, within twenty years before the commencement of the action."

The statute of limitations for the recovery of real property and the doctrine of adverse possession are two sides of the same coin. The statute of limitations was, for much of Oregon's history, the legal basis for a claim of adverse possession. See, e.g. , Coos County v. State of Oregon , 303 Or. 173, 191, 734 P.2d 1348 (1987) ("Acquisition of title by adverse possession is based upon the running of the statute of limitations for bringing an action to recover real property."). Though the legislature codified adverse possession, or Laws 1989, ch. 1069, the doctrine remains inextricably bound up in our case law with the ORS 12.050 statute of limitations. Therefore, the case law on adverse possession is useful for determining when the statute of limitations begins to run on an ejectment claim.

Defendant relies on our analysis in McGrath v. Bradley to argue that, after the parties' mother died, plaintiff merely acquiesced in defendant's continuing use of the property, which he argues is not enough to show that he was using the property with plaintiff's permission. 238 Or. App. 269, 274-75, 242 P.3d 670 (2010) (explaining that, in the context of a prescriptive easement, a property owner must do more than show mere acquiescence in the nonowner's use of the land to establish permissive use). However, McGrath is a case involving a prescriptive easement, not adverse possession, and, as a result, defendant's reliance on that case is misplaced. See Hoffman v. Freeman Land and Timber, LLC. , 329 Or. 554, 562-63, 994 P.2d 106 (1999) (use of prescriptive easement case law in the context of adverse possession is reversible error).

In cases involving a "pure mistake" over a boundary dispute, the law presumes that the nonowner's use is hostile to the owner's interest. Hoffman , 329 Or. at 561 n 4, 994 P.2d 106 ; Morris v. Kanne , 295 Or. App. 726, 732, 436 P.3d 36 (2019). Here, the presumption does not apply because this is not a case of a mistaken boundary line.

An exception exists when the claimant came into possession based on an alleged parol gift of the land, even though the possession originated with the landowner's permission. See Miller v. Conley , 96 Or. 413, 417-19, 190 P. 301 (1920) ; Schrenk v. Garvin , 76 Or. App. 523, 526, 709 P.2d 762 (1985), rev. den. , 300 Or. 563, 715 P.2d 95 (1986). Because a parol gift is not at issue here, the exception does not apply.

Many of the cases cited herein, including Rise and McCall , are cases in which we reviewed the trial court's findings of facts de novo , whereas here we are reviewing for legal error. Nevertheless, the legal principle-that one whose possession originated with permission must clearly communicate by words or deeds his intention to claim an ownership right in the property before the possession will be considered adverse-is applicable to our analysis. Cf. Troubled Asset Solutions v. Wilcher , 291 Or. App. 522, 533 n 4, 422 P.3d 314, rev. allowed , 363 Or. 727, 429 P.3d 384 (2018) ("We acknowledge that the cases we cite regarding gross negligence were subject to de novo review. Although they employed a different standard of review of the facts, the legal principles delineated in those cases are still relevant to our analysis.").

The ultimate result in this case is almost certainly unsatisfying to both parties. Defendant is left without legal title to the property, but plaintiff, who retains legal title, is unable to eject defendant. This outcome, however, results from defendant's failure to prove the boundaries of the land he claimed by adverse possession, which is a product of the nature of the evidence that he presented at trial.