No. 723            August 13, 2025            569

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Joseph POWERS
and Adrienne G. Powers, aka Adienne G. Powers,
husband and wife,
*Plaintiffs-Respondents,*

*v.*

G. Patrick DAGUE
and Barbara Lezynski, individually and as administrators
of the 1339 Crissey Circle Family Trust;
and COASTAL CLIFFS, LLC,
an Oregon limited liability company,
*Defendants-Appellants.*

Curry County Circuit Court
20CV15542; A178375

Jesse C. Margolis, Judge.

Argued and submitted July 27, 2023.

Melisa Button argued the cause for appellants. Also on the briefs was Hornecker Cowling LLP.

David B. Paradis argued the cause for respondents. Also on the brief were Mark R. Weaver and Brophy Schmor LLP.

Before Joyce, Presiding Judge, Jacquot, Judge, and Armstrong, Senior Judge.

ARMSTRONG, S. J.

Reversed and remanded for entry of judgment for defendants on adverse possession counterclaim; otherwise affirmed.

## ARMSTRONG, S. J.

This appeal concerns defendants' claims to an interest in a cliffside portion of plaintiffs' land. Plaintiffs and defendants own adjoining real property on a bluff in Brookings, Oregon, overlooking the Pacific Ocean. A stairway leads from defendants' property down the face of the bluff to the beach, crossing plaintiffs' property as well as property owned by a third party, Linda Voyles. Plaintiffs learned of the intrusion of defendants' stairway on their property in 2019 from an email that they received from a friend of Voyles, who, in turn, had learned of the intrusion of the stairway on her and plaintiffs' property from a survey obtained by a neighbor. After the parties were unable to resolve disputes that arose among them over the ownership and use of the stairway on their respective properties, plaintiffs and Voyles filed separate actions against defendants. Voyles dismissed her action after reaching a settlement with defendants, but plaintiffs and defendants were unable to settle their dispute.

Plaintiffs' original complaint in their action alleged claims against defendants for trespass and nuisance and for declaratory and injunctive relief. In their answer, defendants asserted counterclaims against plaintiffs for adverse possession, various types of easements, quiet title, and declaratory relief. The court bifurcated trial and tried defendants' counterclaims first. After trial of the counterclaims, the court issued a letter opinion denying all of defendants' counterclaims.

The court's letter opinion focused principally on defendants' claims for adverse possession and a prescriptive easement. The court rejected the claim for adverse possession on three grounds: (1) that the use of the stairway on plaintiffs' land was not open and notorious because, due to brush and topography, the stairway was not visible from any portion of plaintiffs' property on which people might safely go, nor from any publicly accessible area other than the beach below the property; (2) defendants failed to prove a sufficient period of hostile possession of the disputed portion of plaintiffs' property; and (3) that defendants had failed to prove that they and the relevant predecessors in interest

had an honest belief, under ORS 105.620, that they were the actual owners of the disputed portion of plaintiffs' property. The court rejected defendants' prescriptive easement claim for the same failure to prove an open and notorious use on which the court rejected defendants' adverse possession claim and on the further ground that defendants failed to prove adversity for a sufficient time period.

The court subsequently entered a limited judgment dismissing defendants' counterclaims; the parties filed a stipulated motion abating the trial of plaintiffs' claims pending resolution of an expected appeal by defendants of the limited judgment; and defendants appealed the limited judgment. Defendants now raise assignments of error on appeal challenging the trial court's denial of their claims.

We conclude that the court erred in its understanding of the open and notorious elements of adverse possession and, hence, erred in concluding that defendants had failed to prove those elements. We also conclude that, on this record, no reasonable factfinder could fail to find that defendants had proven the element of hostility and that, for more than a 10-year period, the immediately preceding owners of defendants' property, the Lausmanns, had an honest belief that they owned the stairway and the land, including plaintiffs' land, over which the stairway ran to the beach. Hence, we conclude that the court erred in denying defendants relief on their counterclaim for adverse possession. In light of that conclusion, we do not reach the assigned errors on defendants' prescriptive and implied easement claims.

"In a bench trial, to preserve for appeal a contention that one was entitled to prevail as a matter of law on a particular claim, the party who does *not* bear the burden of persuasion on that claim must move for directed verdict (or the like), whereas the party with the burden of persuasion need not make such a motion." *Farnsworth v. Meadowland Ranches, Inc.*, 321 Or App 814, 820, 519 P3d 153 (2022). Here, defendants had the burden of persuasion on their own adverse possession counterclaim, so they did not need to make a motion at trial to preserve for appeal their claim that they were entitled to prevail on adverse possession as a matter of law. Our standard of review is the same as for

a directed verdict, however. Directed verdict "is appropriate only when a [party] is entitled to judgment as a matter of law. *** Our task is not to weigh the evidence or to assess witness credibility. Rather, we view the evidence in the light most favorable to *** the nonmoving party, affording him every reasonable inference that can be drawn from it." *Kelley v. Washington County*, 303 Or App 20, 21, 463 P3d 36 (2020) (citations omitted); *see also Tiedemann v. Radiation Therapy Consultants, P.C.*, 299 Or 238, 244-45, 701 P2d 440 (1985) ("A directed verdict for a defendant results when a plaintiff fails to meet its burden of proof on an issue of fact. A directed verdict for a plaintiff results when a plaintiff has met its burden of proof on an issue and the defendant is unable to rebut that evidence."). Our review is thus for legal error. *Kelley*, 303 Or App at 21.

We state the undisputed facts from the record in the light most favorable to the plaintiffs. Defendants' property is located at 1339 Crissey Circle in Brookings (1339 Crissey). Plaintiffs' property is immediately north of defendants' property and is located at 1347 Chetco Avenue (1347 Chetco). Before 1957, both properties were part of a large parcel. At that time, a trail to the beach originated at what is now 1339 Crissey and crossed over what is now 1347 Chetco.

Importantly, Kelly Sievers acquired 1339 Crissey in 1992, and the property was later titled in his and his wife Michelle Sievers' names. As the trial court found, Mr. Sievers made substantial improvements to the property, including the construction of an elevated stairway that originated on the 1339 Crissey property, was attached to the deck of the house, and followed the path of the original trail down to the beach. The court focused in its letter opinion on Mr. Sievers' background as an engineer and fixed-wing and helicopter pilot and his role in managing the construction of the improvements to conclude that it "is likely that Mr. Sievers either had a conscious doubt as to whether the trail and stairs were completely on his property, or he knew that [the] trail/stairs were not completely on 1339 Crissey," and that "it is highly unlikely that a person with his education and experience with the property would not be aware of the

general location of the boundary lines." However, the court also noted, and the record shows that "Mrs. Sievers never thought about the boundary lines of the property or where the stairs were in relation to a boundary line. She believed the stairs were hers." After Mr. Sievers' death, Mrs. Sievers sold 1339 Crissey to Jerry and Donnis Lausmann in 2003. The listing information for the property identified the stairway to the beach as a feature of the property, which was consistent with Mrs. Sievers' understanding of her ownership of the property.

Mrs. Lausmann made little to no use of the stairway to the beach because of her age and the condition of the stairway. Mr. Lausmann relied on a wheelchair for mobility, and he made no use of the stairway. The Lausmanns' family and guests did use the stairway for access to the beach, and the Lausmanns hired people to maintain the property and the stairway during their ownership.

Warren and Janet Krick acquired 1347 Chetco in 1995. They did not move there immediately because they were continuing to work in another state. After a number of years, Mrs. Krick moved onto the property while Mr. Krick was winding up his medical practice in Colorado. After both had moved to the property, they walked to the beach below their property from a nearby park, Harris Beach State Park, to look at their property from the beach and saw the stairway running from 1339 Crissey to the beach.

The Lausmanns gave the Kricks permission to use the stairway from 1339 Crissey to the beach. The Kricks thereafter used the stairway to get to the beach until February 2008, when the Lausmanns told them that, based on the advice of their attorney, who had sent them a letter describing their liability risk for injuries sustained by permissive users of the stairway, they would no longer allow the Kricks or others living in the area to use the stairway. The Kricks accepted that decision and made no further use of the stairway.

Defendants acquired 1339 Crissey in 2019 from a trust established by the Lausmanns. The listing information and marketing materials for the property identified the

stairway to the beach as a feature of the property, which was consistent with the Lausmanns' understanding of their ownership of the property.

Plaintiffs acquired 1347 Chetco from the Kricks in 2015. As noted earlier, plaintiffs learned of the stairway and its location on their property and on Voyles' property to the north in 2019 when they received an email from a friend of their neighbor Voyles.

Allowing parties to acquire ownership of real property by adverse possession serves a number of policy purposes, such as "encouraging and rewarding the productive use of land," "discouraging the abandonment of land," and promoting the "certainty of land ownership." *Glenn v. Glenn*, 310 Or App 661, 667 n 6, 487 P3d 856 (2021). ORS 105.620 codified the common law of adverse possession. *Lieberfreund v. Gregory*, 206 Or App 484, 490, 136 P3d 1207 (2006). A claimant must show that the claimant and their predecessors in interest "have maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property for a period of 10 years." ORS 105.620(1)(a). In addition, a claimant must show that, throughout the vesting period, they and their predecessors in interest had the honest belief that they owned the property that had an objective basis and was reasonable under the circumstances. ORS 105.620(1)(b). The claimant must prove each element by clear and convincing evidence. ORS 105.620(1)(c).

To establish that the use of the property is open and notorious, claimants must prove that their own possession of the disputed property "is of such a character" that an owner has "the means of knowing it, and of the claim." *Hoffman v. Freeman Land and Timber, LLC*, 329 Or 554, 560, 994 P2d 106 (1999) (internal quotation marks omitted); *see id.* ("[L]imited activity may satisfy the requirement of open and notorious use * * * if it is significant enough to put an owner on notice that his or her title is being challenged."). The focus of the inquiry is therefore on the nature of the claimant's conduct, that is, whether it was significant enough to afford the title holder a reasonable opportunity to learn of the use during the 10-year vesting period, and not whether the title holder in fact had notice of that conduct. *See Reeves v. Porta*,

173 Or 147, 155, 144 P2d 493 (1944) ("the acts of the alleged occupant must be so open and exclusive as to leave no inquiry as to his intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse" (internal quotation marks omitted)); *see also Hammond v. Hammond,* 296 Or App 321, 335, 438 P3d 408 (2019) ("the law requires an adverse possessor to 'keep his flag flying' on the land in such an open, notorious, and hostile manner that knowledge of the adverse possessor's claim to the land *can be imputed* to the landowner" (emphasis added)).

Here, as the trial court recognized, the stairway is readily visible from the beach below the parties' properties, which is readily accessible from a nearby state park. Both plaintiffs' predecessors and plaintiffs were able to see the stairway from the beach when they went to the beach below their property. Various exhibits admitted at trial confirm that the stairs are readily visible from the beach. That plaintiffs and their predecessors could not find a safe location on their property from which to see the stairway and could not safely go down the bluff to the beach from their property to see it is of no moment. Contrary to the trial court's understanding, the likelihood that plaintiffs or their predecessors would visit the public beach below their property, or the extent to which the public uses the public beach below plaintiffs' property, does not bear on whether the stairway and its use constituted an open and notorious use of plaintiffs' property.[1] Plaintiffs and their predecessors had a reasonable opportunity to learn of the use of the stairway on their property by looking at their property from the public beach, which was accessible by them and the public

---

[1] Plaintiffs rely on *Olson v. Williams*, 266 Or 592, 514 P2d 552 (1973), in support of their contention that the elevated stairway that crossed over their property did not establish the "open and notorious" element because it was impossible to see the stairs crossing the Chetco property cliffside from the top of the property. But *Olson* is of no help here. The plaintiffs in *Olson* relied on the fact that they had planted 22 ornamental trees along the disputed strip to show that their possession was open and notorious. *Id.* at 593. Those trees, however, could not serve to provide notice of the plaintiffs' claim to the land when they were "indistinguishable from the surrounding natural growth" until they were sufficiently mature, and, until they were sufficiently mature, it would have been "extremely difficult to discern" the asserted boundary line. *Id.* at 594. No such difficulty is present here, as plaintiffs could clearly see, from the public beach, the stairs themselves and their encroachment over the disputed land.

from a nearby state park. The law of adverse possession requires no more.

As for the other elements on which the court rejected defendants' adverse possession counterclaim, the court's error arises from its failure to address whether the record establishes that defendants' immediate predecessors, the Lausmanns, satisfied the common law and statutory elements for adverse possession for at least a 10-year period during their ownership of the property between 2003 and 2019. It does.

The court's letter opinion placed great emphasis on the actions of Mr. Sievers, who owned 1339 Crissey before the Lausmanns, and his role in improving the stairway in the mid-1990s, which led the court to conclude that he knew or reasonably should have known that the stairway crossed 1347 Chetco on its path to the beach. Notably, however, that focus fails to grapple with the role of Mrs. Sievers, who is the person who sold 1339 Crissey to the Lausmanns in 2003 under a listing that identified the stairway to the beach as a feature of the property. As the court found, Mrs. Sievers did not think "about the boundary lines of the property or where the stairs were in relation to a boundary line" and believed that the stairs were hers. That understanding of her ownership was conveyed to the Lausmanns through the marketing materials for the property, and nothing in the record suggests that the Lausmanns had—or had reason to have—a different understanding of their ownership of the stairway.

Further, as a result of the letter that the Lausmanns received from their attorney in February 2008, the Lausmanns revoked the permission that they had given the Kricks and others to use their stairway to the beach, a revocation to which the Kricks acceded. The very limited personal use of the stairway by the Lausmanns, as distinguished from the maintenance of the stairway by people employed by them and the use made of the stairway by the Lausmanns' family and other guests also provided no basis for them to question their ownership of the stairway. As it is, the fact that the stairway crossed plaintiffs' and Voyles' property became known only as a result of a 2019 survey obtained by Voyles' neighbor.

With a proper focus on the Lausmanns' ownership of 1339 Crissey from 2003 to 2019, it is evident that their ownership satisfied those elements of adverse possession—hostility and honest belief—that the trial court found to be lacking. As for the element of hostility, the physical encroachment of the stairway onto 1347 Chetco, the fact that the stairway originates on the private deck of the Crissey home, the revocation by the Lausmanns of the permission given by them to the Kricks and others to the use the stairway, and the presence of a wall and gate blocking access to the top of the stairs, indisputably satisfies that element. *See Stiles v. Godsey*, 233 Or App 119, 130, 225 P3d 81 (2009) (the claimants' possession of the disputed land under mistaken belief of ownership resulting from representations concerning the property made at the time of sale that were consistent with encroachments of physical structures on the land satisfies the requirement of hostile use).

As to the "honest belief" element, ORS 105.620(1)(b) provides:

> "At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:
>
> "(A)   By the person and the person's predecessor in interest, continued throughout the vesting period;
>
> "(B)   Had an objective basis; and
>
> "(C)   Was reasonable under the particular circumstances."

The statute is clear regarding whose honest belief is relevant: the person claiming adverse possession (here, defendants) or their predecessors in interest (here, the Lausmanns). And, the statute circumscribes the pendency of that honest belief: from when those persons first entered into possession of the property and continuing throughout the vesting period.[2]

---

[2] And, as we have observed, "proof of the requisite 'honest belief' will normally establish hostile possession under claim of right, by application of the pure-mistake doctrine." *Wood v. Taylor,* 307 Or App 688, 699, 479 P3d 560 (2020) (where the defendants claim an honest but mistaken belief of ownership, the honest belief and hostility elements may be analyzed together).

As to whether the Lausmanns, defendants' predecessors in interest, had an honest belief that they actually owned the property on which the stairway was located, including the portion crossing 1347 Chetco, the record compels a finding under the applicable clear and convincing evidence standard that they had that belief when they acquired 1339 Crissey and throughout the 16-year period that they owned it, that their belief had an objective basis, and that their belief was reasonable under the circumstances.[3] The court erred in concluding otherwise and in denying defendants' counterclaim for adverse possession.[4] *Cf. Lopez v. Oregon State Hospital*, 342 Or App 190, 197-98, ___ P3d ___ (2025) (no reasonable factfinder could conclude that the defendant was in contempt when the uncontradicted facts in the record conclusively established the defendant's affirmative defense); *In re Oregon State Hospital,* 342 Or App 185, 188-89, __ P3d ___ (2025) (same).

In light of our conclusion on defendants' counterclaim for adverse possession, we do not reach defendants' assigned errors that challenge the dismissal of their counterclaims for prescriptive and implied easements over plaintiffs' land. Accordingly, we reverse the limited judgment and remand to the trial court to enter a judgment in defendants' favor on their counterclaim for adverse possession.

Reversed and remanded for entry of judgment for defendants on adverse possession counterclaim; otherwise affirmed.

---

[3] The trial court's analysis of the honest-belief element was erroneously predicated on its understanding of Mr. Sievers' conduct while he was building the stairs, many years before Mrs. Sievers sold the property to the Lausmanns.

[4] Plaintiffs make additional arguments about other elements of adverse possession that we reject without discussion.